Hon. A. M. BUCHANAN,
Hon. H. M. SPOFFORD,
Hon. J. N. LEA,
Hon. C. VOORHIES,

} *Associate Justices.*

---

## R. D. SHEPHERD *v.* LEEDS & Co.

The registry of a draft on the owner of a saw-mill expressed on its face to be for the value of machinery furnished for the saw-mill, but which was not accepted at the time of its registry, is not a registry under Art. 3239 of the Civil Code against the owner which will affect the property in the hands of an innocent purchaser, although the machinery may have increased the value of the immovable by having become a part of it.

APPEAL from the District Court of Jefferson, *Burthe,* J. *Durant & Horner,* for plaintiff and appellant. *Thomas Hunton,* for defendant.

MERRICK, C. J. *Nicholas C. Hall* having a judgment against *Jesse Fulton* issued a *fi. fa.* thereon, seized the Carrollton saw-mills, the property in controversy, as the property of *Fulton,* and at the Sheriff's sale on the 11th day of July, 1851, purchased the same. *Hall's* title was recorded.

*Leeds & Co.* on the first day of October, 1851, received from *Jesse Fulton* two drafts (so called) payable in three and six months, drawn by himself on *Nicholas C. Hall.* They are in the following form:

"New Orleans, October 1st, 1851, three months after date *please* pay to the order of *Messrs. Leeds & Co.,* seven hundred and sixty dollars and nineteen cents, with eight per cent. per annum interest from date until paid, for value received in machinery furnished for saw-mill at Carrollton, in the parish of Jefferson, and place the same to account of said mill."

(Signed)      JESSE FULTON.

"To *N. C. Hall, Esq.,* New Orleans."

SHEPHERD
v.
LEEDS.

Before *Hall* accepted the drafts, if they may be so considered, viz: October 7th, 1851, they were recorded in the Recorder's office of the parish of Jefferson. It does not appear how they were noted on the index, whether against *Hall* or *Fulton.*

On the 11th day of March, 1852, *N. C. Hall* sold the property to *Wood & Barrow.*

*L. F. Générès* having a judgment against *Wood & Barrow* seized the saw-mills, and caused the same to be sold at Sheriff's sale on the 2d day of May, 1853.

At this sale the plaintiff, *R. D. Shepherd*, became the purchaser. In March, 1855, *Leeds & Co.* obtained judgment against *Fulton* for the amount of their two drafts, and their privilege upon the property was recognized. Neither *Hall, Wood & Barrow*, nor *Shepherd* were parties to the suit.

*Leeds & Co.*, disregarding the various conveyances, issued an execution and seized the property and advertised the same for sale. At the time of the seizure *Fulton* was living on the property, but he informed the Sheriff that he was not the owner. It is not pretended that these sales were simulated, and the question on behalf of *Leeds & Co.* has been argued on the ground that the privilege gives them a right to seize and sell the property.

The plaintiff relies mainly upon two grounds to sustain his injunction, viz:

1st. The recording of the drafts could only affect *Fulton*, for he was the only party to them when recorded. But he was not the owner of the property. It could not, therefore, bind the property in the hands of *Hall*, the owner, so as to affect innocent purchasers.

2d. Conceding that *Leeds & Co.* had a privilege upon the property, they could not disregard the ownership of the plaintiff, a third possessor, and treat the property as belonging to *Fulton.*

As it will have the effect to end this controversy we will consider the first of these questions presented by the plaintiff.

By Article 3229 of the Civil Code, it is provided that contractors and those who have supplied the *owner* materials for the construction or repair of his buildings or other works, preserve their privilege *only in so far* as they have recorded with the Register of Mortgages the act containing the bargain they have made, or the amount or acknowledgment of what is due them, in all cases where the amount of the bargain or agreement, or the amount of the account or acknowledgment exceeds the sum of five hundred dollars.

The registry made by *Leeds & Co.* of their draft is not a registry against the owner of the property, and cannot prejudice third parties acquiring rights from the owner. The purchasers were only bound to examine the office of the Recorder in the name of *Hall* in order to ascertain whether any privileges had been created upon the property during the period that *Hall* was the owner of it.

The draft, until accepted, is no agreement or bargain of *Hall's*, neither can it be called an account against or acknowledgment by him. The registry of the draft, therefore, against one *not owner*, cannot affect the immovable as against innocent purchasers, although the machinery may have increased the value of the immovable by having become a part thereof.

As the contract of *Leeds & Co.* has not been recorded so as to operate as a privilege upon the property in controversy; the injunction sued out in this case must be perpetuated.

It is, therefore, ordered, adjudged, and decreed by the court, that the judgment of the lower court be avoided and reversed, and it is further ordered that the injunction sued out in this case be made perpetual. ; said *Leeds & Co.* and said Sheriff be perpetually injoined from selling said steam engine used for running said steam saw-mill, and it is further ordered that the said defendants, *Leeds & Co.*, pay the costs of both courts.