LAND, J.
Plaintiff sued out executory process as the holder of a number of notes executed and indorsed in blank by the defendant, and representing the price of a certain lot, with the buildings and improvements thereon, purchased by the defendant from R. B. Pace on July 8, 1907.
At the time of this sale the only improvements on the lot were the foundations of a residence. Huddleston continued the construction of the house, which, however, was not fully completed for the lack of funds. When this suit was filed there were a number of unsettled claims for material and labor furnished in the construction of the building. The owners of these claims intervened in the suit, and asserted that their privileged claims ranked any mortgage that the plaintiff might have on the property. The lot and building were separately appraised, and the property as a whole was sold for $2,200 at sheriff’s sale. The Judgment below was in favor of the interveners, and the plaintiff has appealed.
The crucial question in the case is that of the timely registry of the claims of the interveners.
The act of sale and mortgage from Pace to Huddleston was recorded on July 11, 1907. The interveners made verbal contracts with. Huddleston. The contract of the Hoke Plumbing Company was made in July, and the affidavit was not recorded until December 5,1907. The contract of Blades for painting and papering was made in July, and the affidavit was not recorded until November 14, 1907. The Harrison contract for plastering was made in July, and his affidavit was recorded on November 7, 1907. The Victoria Lumber Company delivered a bill of lumber to defendant on October 14, 1907, and the affidavit was not recorded until February 26, 1908. The Wessel & Company contract was made in June, 1907, and the affidavit was recorded on August 5, 1907. The Wortman affidavit for tin work was recorded on February 1, 1908, and his contract was made in the summer of 1907.
The plaintiff contends that none of the lien claims were recorded in time to give them preference over his prior mortgage.
Article 3274 of the Civil Code (as amended by act No. 45, p. 59, of 1877) reads as follows:
“No privilege shall have effect against third persons, unless recorded in the manner required by law in the parish where the property to be affected is situated. It shall confer no preference on the creditor who holds it, over creditors who have acquired a mortgage, unless the act or other evidence of debt is recorded within seven days from the date of the act or obligation of indebtedness, when the registry is required to be made in the parish where the act was passed or the indebtedness originated and within fifteen days if the registry is required to be made in any other parish of this state. It shall however have effect against all parties from the date of registry.”
For a privilege to have effect over an existing mortgage, it must be recorded within the delay prescribed by article 3274 of the Civil Code. Bank v. Fortier, 27 La. Ann 243; Bank v. Hotel Association, 27 La. Ann. 460; State ex rel. Prager v. Recorder of Mortgages, 28 La. Ann. 534; Gallaugher v. Congregation, 35 La. Ann. 829; Givanovitch v Congregation, 36 La. Ann. 274.
*525 The delay of 7 or 15 days, as the case may he, runs from “the date of the act or obligation.” The privilege, whether resulting from a written or verbal contract, must be recorded in order to affect third persons. Notice of a verbal contract may be given by affidavit. In the only decision cited by counsel for interveners (Brashear v. Cooperage Co., 50 La. Ann. 587, 23 South. 540) the court said:
“Our law requires all privileges on immovables to be recorded. When recorded within the prescribed period, it is declared, they rank previous mortgages. This period is seven days from the date of the contract or private writing evidencing the debt, or affidavit of the debt when there is no writing.”
In that case there were claims of laborers for wages and of furnishers of materials for repairs, which were recorded within the prescribed time after the wages became due and after the materials were furnished, and the court held that such claims were seasonably recorded and primed a prior mortgage. It does not appear that the laborers had contracted their services for any particular time, or that the furnisher had contracted in advance to deliver the materials for a particular price. The case can be reconciled with the text of the Civil Code and the established jurisprudence only on the theory that there was no express contract covering the services to be rendered or the materials to be furnished. In the matter of registry there can be no difference in principle between a written contract and a verbal contract for the same thing. Where there is no express contract fixing the sum to be paid, no amount can be stated as due or to become due until the work is done or the materials are furnished. In such a case it may be that the delay for registry will run from the date of performance. “Lex non cogit ad impossibilia.”
The inevitable legal conclusion is that the claims of the interveners were not recorded in time to make their liens prime the special prior mortgage acquired by the plaintiff.
The interveners obtained judgment against Huddleston for the amount of their respective claims. Pace was not made a party to-the proceedings; but Huddleston testified that the sale and mortgage of the lot was a device to raise money to finish the building, and that the real contract was that Pace was to sell him the lot and house complete for $3,000; that the lot and house in its then condition was worth less than $1,000; that he received only $300 of the money borrowed by Pace on the mortgage notes; and that Pace was to pay the claims of all the interveners.
Plaintiff obtained all the mortgage notes from the Commercial National Bank, which held them as collateral security for a debt of $1,000 due by Pace. Plaintiff paid the bank $1,000 and took up the collateral. The secretary and treasurer of the plaintiff company testified that the notes were bought from the bank for the price of $1,000. Pace testified that the notes were taken by plaintiff as collateral security for the money paid the bank and for an indebtedness of about $1,700 due by him to the Allen-Wadley Lumber Company. The testimony of Mr. Files, who acted as counsel in the transaction, was in substance that the mortgage notes were taken as collateral for the money paid to the bank and for a balance of account due by Pace to the Allen-Wadley Lumber Company. On the theory that the plaintiff holds the notes sued on as collateral security, its claim largely exceeds the proceeds of the sale of the property. The officers of the plaintiff company are not charged with knowledge or notice of the understanding between Pace and Huddleston as to the purposes for which the sale and mortgage were executed.
It is therefore ordered that the judgment below, in so far as it recognizes the privileges of the interveners and third opponents *527 'on the proceeds of the sale of the property sold under plaintiff’s writ of seizure and sale, be annulled, avoided, and reversed, and it is now ordered that all of said interventions and oppositions, in so far as they affect the plaintiff, be dismissed, with costs; and it is further ordered that the proceeds of said sale, less costs, be paid over to the plaintiff, and that the costs of this appeal be paid by the interveners and opponents, appellees herein.