(100 South. 296)

No. 26288.

## ROBINSON-SLAGLE LUMBER CO., Inc., v. RUDY et al.

(April 7, 1924. Rehearing Denied by Division B May 12, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Mechanics' liens** ⬩⟳198—**When recordation of lien not retroactive stated.**

Under Civ. Code, art. 3274, and Act No. 229 of 1916, where materialman neglects to record lien for more than 45 days after delivery, recordation is effective only from time of recordation.

2. **Mechanics' liens** ⬩⟳137(6)—**Filing claim against former "owner" insufficient.**

Where pending construction of improvements owner sells to another, no lien results from recording claim for materials against former owner; section 2 of statute (Act No. 229 of 1916), requiring statement filed to set

forth name of owner, meaning owner at time of filing.

.[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Owner.]

3. **Mechanics' liens** ⊂═295—**Sheriff could not sell property on foreclosure for less than full amount of prior mortgage.**

Where prior mortgage primed any claim which materialman might have, sheriff could not on foreclosure of materialman's lien adjudicate property for less than full amount of mortgage, in view of Code Prac. art. 684.

Appeal from First Judicial District Court, Parish of Caddo; J. H. Stephens, Judge.

Action by the Robinson-Slagle Lumber Company, Inc., against L. M. Rudy and another. Judgment for defendants, and plaintiff appeals. Affirmed.

Thatcher & Webb, of Shreveport, for appellant.

Foster, Looney, Wilkinson & Smith, and E. W. & P. N. Browne, all of Shreveport, for appellees.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

ST. PAUL, J. The facts and issues involved are thus stated by plaintiff appellant (Brief, pp. 2–9):

B. E. Jones, being the owner of lots 1 and 2, block 6, of the University Heights subdivision of the city of Shreveport, La., in January, 1920, entered into an agreement with L. M. Rudy to construct for him on said premises certain improvements, consisting of a garage and dwelling; it being stipulated between them that Rudy would furnish the plans and order all materials, employ laborers, and superintend the construction of work for Jones, and receive as his compensation 10 per cent. of the total cost.

Under this agreement Rudy furnished plans, ordered materials and work done by electricians and plumbers, and was carrying on the construction work, building according to the plans, and had about completed the foundations when Jones sold to H. D. McDonald, in March, 1920, who continued in force the contract made by Jones with Rudy, agreeing with Jones to pay all material and other bills incurred in the construction work at the date of the purchase.

Under this agreement Rudy continued ordering materials, employing laborers for Mc-Donald, and proceeded with the construction work according to the plans, until some time in April, 1920 (the exact date not being established), when work was discontinued awaiting delivery of materials, until the latter part of July, or some date in August, 1920, when the work was resumed and continued for a short time, and again discontinued (McDonald being without funds) until October, 1920, when work was resumed for a short time and discontinued (McDonald being without funds) until February 24, 1921, when the work was finally abandoned by Rudy, leaving the dwelling approximately 85 or 90 per cent. completed, but not inhabitable.

Some of the claimants furnished materials while the ownership of the lots was in Jones, others while the ownership was in McDonald, and others while the work was being done for Jones as well as McDonald.

Those furnishing materials while the ownership was in B. E. Jones were Robinson-Slagle Lumber Company, Inc., and Central Lumber Company, and those furnishing material or work while the ownership was in McDonald were Witt Lumber Company, Joshua Gill, C. C. Hardman & Co., city of Shreveport, and E. W. Hamiter, while those furnishing material or labor while the ownership was in Jones and afterwards while the ownership was in McDonald were L. M. Rudy and McKennon Electric Company, the facts with relation to each of the claimants being as follows:

Robinson-Slagle Lumber Co., Inc., furnished to B. E. Jones between January 7, 1920, and February 23, 1920, material of the value of $2,367.30, which it is admitted was used in the construction work and enhanced the value of the property to the extent of $2,367.30; *it recorded its claim against L. M. Rudy and B. E. Jones on the Mortgage Records of Caddo parish, Louisiana, vol. 71, p. 600, on June 17, 1920,* and against L. M. Rudy, N. E. Jones, and H. D. McDonald on December 23, 1920, volume 76, p. 696; it brought suit against L. M. Rudy, B. E. Jones, and H. D. McDonald, in solido, and obtained judgment against B. E. Jones and H. D. McDonald, in solido, on the 19th day of March, 1921, with recognition of a privilege against the property, which judgment was recorded on the Mortgage Records, vol. 78, p. 93, on March 19, 1921. * * *

The record also shows that B. E. Jones sold the property (lots 1 and 2, block 6, of the University Heights subdivision of the city of Shreveport) to H. D. McDonald while the improvements were in course of construction, on

the 12th day of March, 1920, recorded on April 6, 1920, the consideration of the sale reading in part as follows: "The purchaser also assumes and agrees to pay all material and other bills still unpaid and incurred in the building of the improvements now being built on said lots," and that on July 29, 1920, H. D. McDonald gave a special mortgage on the property to secure $10,000 which was recorded on the Mortgage Records, vol. 74, p. 156, on August 25, 1920.

Robinson-Slagle Lumber Company, Inc., issued a fi. fa. under its judgment against H. D. McDonald, and the property was seized, and in due course it was adjudicated to it at the price of $7,000, and, the sheriff refusing to make title to it, and cancel the privileges, etc., shown on the mortgage certificate, it applied for and obtained a rule against the sheriff and the parties shown to have filed claims against the property to have their claims canceled and a deed made by the sheriff to it under the adjudication.

Plaintiff in the rule alleged that it had obtained judgment against H. D. McDonald and B. E. Jones, recognizing its privilege, that a fi. fa. had issued thereon and the property adjudicated to it; that it had a privilege superior in rank to all other claims against the property; and that it was entitled to retain the amount due it out of the proceeds of the property by preference to all other creditors, and to have the sheriff make to it a deed and cancel all claims against the property.

The various parties made defendants, with the exception of Mrs. Florence Nelson, answered, denying that plaintiff in rule had a privilege or that it was of superior rank; set up a privilege on their own behalf, praying that their privileges be recognized and paid from the proceeds of the sale; while Mrs. Nelson answered, denying that plaintiff had a privilege, alleging that the sale was invalid, and asserting that she had a special mortgage, and praying that plaintiff's demands be rejected.

The lower court rendered judgment decreeing the mortgage held by Mrs. Nelson to be superior in rank to the claim or the plaintiff; decreeing the adjudication made by the sheriff to plaintiff to be null and void, and ordering the property released from seizure; and dismissed, as of nonsuit, the demands of all other parties to have their alleged privileges ranked.

## I.

Robinson-Slagle Lumber Co., Inc., alone appealed; and the controversy here is entirely between it and Mrs. Florence Nelson, the issue being purely and simply whether appellant has a lien and privilege on the property superior to the mortgage held by the appellee, Mrs. Nelson, or *vice versa.*

## II.

In Gleissner v. Hughes, 153 La. 133, 95 South. 529, this court held:

That: "Under Act No. 229 of 1916, requiring statement of claims for labor and materials to be filed within 45 days after acceptance of the work in order to acquire a privilege, where a building was erected by the owner under a verbal agreement with one superintending the work for a percentage of the cost, the 'time of acceptance' was the time when the labor and materials were received and accepted." Syllabus, No. 6.

That: "Under Act No. 229 of 1916, §§ 2, 8, where various deliveries of lumber were made under a single transaction or in filling a single order, a claim filed within 45 days from the last delivery was filed in time, and it was not necessary to file claim as each load was delivered." Syllabus No. 10.

That: "As it has been fairly well settled that Civ. Code, art. 3274, gives liens for labor and materials when duly recorded preference over pre-existing mortgages, persons performing labor and furnishing materials were justified in relying on that interpretation, and it is now too late to announce a different holding as against rights already acquired." Syllabus, No. 3.

That: "Act No. 229 of 1916 extends the time within which liens for labor and materials must be recorded to affect *third persons* from 7 days from the date of the act or obligation of indebtedness, as provided by Civ. Code, art. 3274, to 45 days after the acceptance of the word." Syllabus, No. 5.

This authority (to which we adhere on every point) is therefore conclusive that under the circumstances of this case plaintiff appellant had 45 days from February 23, 1920 (that is to say, until April 8, 1920), in which to record its lien; and that had it done so the effect of such recordation would have been retroactive as of that date, *nunc pro tunc* as it were; of which all persons would have had to take notice as of a lien recorded on February 23, 1920.

[1] But when appellant delayed until June 17, 1920, to record its lien, then such recordation was effective only from that very day, for "it is strictly in accordance with C. C. arts. 3273 and 3274 (as amended by Act No. 45 of 1877), that a mortgage or privilege to give a preference over *pre-existing* claims should be recorded within a given delay, but that as to *future* claims it must be given full effect from the time of its recordation." Le Goaster et al. v. Lafon Asylum et al., 155 La. 158, 99 South. 22.

Now, as shown by the statement of facts, McDonald purchased on March 12th, and recorded his deed, on April 6, 1920, all within 45 days after February 23.

So that, when McDonald acquired the property, he took it with full notice (in contemplation of law) that a lien might be recorded within said 45 days after February 23; and as to him the property might have been affected by a lien so recorded, regardless of the personal obligation which he assumed in his deed of purchase.

But as to those who acquired rights upon the property subsequent to said 45 days (that is to say, subsequent to April 8, 1920), appellant's privilege depends upon whether or not the recordation of its claim (as recorded) on June 17, 1920, created a lien and privilege upon the property *from that day on;* and the mortgage held by the appellee Mrs. Nelson was granted on July 29th (that is to say, 42 days after appellant recorded its claim).

### III.

Had the property still belonged to *Jones* on July 17, 1920, when appellant recorded its claim, the recordation *as made* might perhaps have sufficed.

However, the statute (section 2) requires that the statement filed for record should set forth "the name of the owner"; and there are authorities from other jurisdictions holding under similar statutes, that the owner must be designated *as such* which in this case was not done. For the recorded statement reads simply:

"That said corporation (appellant) furnished materials to L. M. Rudy, who had a contract with B. E. Jones to construct a one-story frame building and garage on lots 1 and 2," etc.

However, we now express no opinion on this point, as it is not necessary for a decision of this case, and it will be time enough to do so when the necessity arises.

[2] Be that as it may; after the expiration of the 45 days during which the claim might have been recorded *nunc pro tunc* as it were, that is to say, with *retroactive* effect, and after the *ownership* of the property had passed to McDonald, we think that no lien or privilege resulted from recording the claim against *Jones* who was no longer the owner of the property.

For a lien or privilege exists only by virtue of some statute creating it, and can be acquired only by complying strictly with the terms of such statute; and this statute requires that the statement should set forth the name of *the owner*.

But *the owner* so meant is the owner at the time the statement is filed for recordation, and *not* one who has parted with the title before that time. See Davis v. Big Horn Lumber Co., 14 Wyo. 517, 85 Pac. 980, citing Sprague Inv. Co. v. Mouatt, 14 Colo. App. 107, 60 Pac. 179; Willamette Lumber Co. v. McLeod, 27 Or. 272, 40 Pac. 93; Collins v. Snoke, 9 Wash. 566, 38 Pac. 161; Edwards v. Derrickson, 28 N. J. Law, 39; Missoula Merc. Co. v. O'Donnell, 24 Mont. 65, 60 Pac. 594, 991; Corbett v. Chambers, 109 Cal. 178, 41 Pac. 873. See also, Waters v. Johnson, 134 Mich. 436, 439, 96 N. W. 504.

And the reason why the name of the actual owner is required is because "it is by the name of the owner only that the index to the records can be made, so as to guide in the examination for incumbrances upon the own-

er's title." Kelly v. Laws, 109 Mass. 395.

In Shepherd v. Leeds & Co., 12 La. Ann. 1, the defendants' claimed a lien upon certain property which had once belonged to one Fulton, being for the price of certain machinery sold to the latter and placed upon said property; and for which he gave certain time drafts drawn by himself upon one *Hall* but not accepted by Hall. At the time the drafts were given and the lien recorded said *Hall* was the owner of the property. Thereafter Hall sold to Wood & Barrow, through whom plaintiff claimed title.

This court said:

"By article 3229 of the Civil Code [(3239?), now R. C. C. 3272], it is provided that' contractors and those who have supplied the *owner* materials for the construction or repair of his buildings or other works, preserve their privilege *only in so far* as they have recorded with the register of mortgages the act containing the bargain they have made, or the amount or acknowledgment of what is due them, in all cases where the amount of the bargain or agreement, or the amount of the account or acknowledgment exceeds the sum of five hundred dollars.

"The registry made by Leeds & Co. of their draft is not a registry against the owner of the property, and cannot prejudice third parties acquiring rights from the owner. The purchasers were only bound to examine the office of the recorder in the name of *Hall* in order to ascertain whether any privileges had been created upon the property during the period that *Hall* was the owner of it.

"The draft, until accepted, is no agreement or bargain of *Hall's*, neither can it be called an account against or acknowledgment by him. The registry of the draft, therefore, against one *not owner* cannot affect the immovable as against innocent purchasers, although the machinery may have increased the value of the immovable by having become a part thereof.

"As the contract of Leeds & Co. has not been recorded so as to operate as a privilege upon the property in controversy, the injunction sued out in this case [against the attempted seizure and sale of the property to satisfy the alleged privilege] must be perpetuated."

The point in the case is that *the owner* against whom the lien must be recorded by the furnisher of materials is *the owner at the time the lien is recorded* and *not* the for-

mer owner with whom the materialman contracted.

And the case is not only in accord with the other authorities above cited, but seems to fit *this case* like a glove.

IV.

[3] We therefore conclude that appellant acquired no privilege upon the property of which McDonald's mortgagee (Mrs. Nelson) was required to take cognizance. And since her mortgage primed any claim which appellant has, the sheriff could not adjudicate the property for less than the full amount of that mortgage. See Code of Practice, art. 684.

Decree.

The judgment appealed from is therefore affirmed.

Rehearing refused by Division B, composed of DAWKINS, LAND, and LECHE, JJ.