151 So. 899

## CONSERVATIVE HOMESTEAD ASS'N v. GUGLIELMO et al.

## In re CITY OF NEW ORLEANS.

No. 32500.

Nov. 27, 1933.

Nat W. Bond, City Atty., and Henry B. Curtis, Asst. City Atty., both of New Orleans, for applicant.

Weiss, Yarrut & Stich, of New Orleans, for respondents.

LAND, Justice.

This is a proceeding by rule taken by the Conservative Homestead Association against the city of New Orleans, recorder of mortgages, and civil sheriff of the parish of Orleans, to cancel certain paving liens recorded by the city of New Orleans, affecting lot 23 in square 366, Third district, bounded by St. Claude avenue, Port, North Rampart, and St. Ferdinand streets.

The paving ordinances were authorized by Act No. 346 of 1926. The contracts for paving were made, and the work was performed, under the provisions of Act No. 105 of 1921 (Ex. Sess.).

There was judgment in the civil district court for the parish of Orleans in favor of the Conservative Homestead Association and against the city of New Orleans, ordering the cancellation and erasure of certain statements of assessments and paving ordinances recorded in the mortgage office for the parish of Orleans.

Upon appeal to the Court of Appeal for the parish of Orleans, the judgment of the lower court was affirmed, and the case is now before us under the writ of review herein granted.

The defendant Pasquale Guglielmo was the owner of the property in question at the time the paving was completed, having acquired the same on July 21, 1916.

Upon the death of his wife, the property was sold and acquired by the Conservative Homestead Association on October 15, 1927, from her succession, and attached to the act were clear mortgage, paving ordinance, and conveyance certificates in the name of Mrs. Nunzia Saia, widow of Pasquale Guglielmo, dated October 17, 1927.

On the same date of this sale, October 15, 1927, defendant Pasquale Guglielmo acquired this property, and granted a mortgage and vendor's lien in favor of the Conservative Homestead Association.

The property was foreclosed upon by the association, and was adjudicated, at public auction, to the association on October 20, 1932, for the sum of $1,000.

The statements of assessments in this case are dated October 7, 1926, and were recorded and filed by the commissioner of public finance for the city of New Orleans July 23, 1928, and the two paving ordinances in this case were recorded in the mortgage office for the parish of Orleans on June 22, 1928.

It is therefore evident that, when the Conservative Homestead Association obtained its vendor's lien and mortgage October 17, 1927, the public records were clear. It is also equally evident that a period of almost one year and nine months elapsed between the date the statements of assessments were made and issued, October 7, 1926, and the date of the recordation of same in the mortgage office, July 23, 1928.

It is provided in section 48 of Act No. 105 of 1921 (Ex. Sess.), p. 225, that "The Commissioner of Public Property shall, *within ten days* after the issuance of said statement of assessments furnish the Commissioner of Public Finance copies thereof," etc.; and that "The Commissioner of Public Finance shall, *within ten days* after he has received said copies from the Commissioner of Public Property, furnish a copy of such statement of assessments to the Recorder of Mortgages for the Parish of Orleans, and the said Recorder shall immediately file the statement of assessments delivered to him, and shall retain and keep the same among the record books of his office, and it shall be and constitute a part of the records of the same," etc.

It is further provided in section 48 of the act (page 226) that: "*From the date* that the said statement of assessments is filed in said mortgage office *it shall act as a first lien and privilege* on each specific real property thereon assessed, *and said lien and privilege shall be superior to vendor's lien and any other privileges or mortgages,* and shall remain in force for the amount due, in principal and interest, including costs of court, if any, for collecting, until final payment has been made."

It is provided in section 19, article 19, of the present Constitution of the state, that: "No mortgage or privilege on immovable property, or debt for which preference may be granted by law, shall affect third persons unless recorded or registered in the parish where the property is situated, *in the manner and within the time prescribed by law.*"

In the City of Shreveport v. Urban Land Co., 177 La. 357, 148 So. 256, 258, this court

was called upon to interpret, at the request of the Court of Appeal for the Second Circuit, section 4 of Act No. 187 of 1920, which reads as follows: "Be it further enacted, etc., That upon the final and satisfactory completion of the work, the municipal authorities shall accept it by ordinance, and provide for the assessment of all abutting real estate and railroad tracks and roadbeds in the amount due by the owner thereof, according to the rule of apportionment stipulated in this act. A certified copy of such ordinance contained in the said assessment *shall within ten days after its passage be filed for record in the office of the Recorder of Mortgages* in the parish in which said assessed property is located, and the same *when so filed and recorded* shall operate as a lien and privilege in favor of said city or town, or its transferees, against the real estate and railroad tracks therein assessed, *which lien and privilege shall prime all other claims except taxes.*"

In the Urban Land Company Case, it appears that the ordinance accepting the paving was recorded in the mortgage records of Caddo parish *fourteen days after its passage,* that C. C. Cook owned the property at the time of the assessment, but had since died, and that the Urban Land Company now owned the property subject to the assessment.

In construing Act No. 187 of 1920, this court said in the Urban Land Co. Case:

"That part of section 4 of the act which provides that the ordinance levying the tax or local assessment shall be filed and recorded within ten days after the date of its passage, must be read and construed with reference to and in connection with the general registry laws of the state, which are found in the Civil Code. When so construed, its meaning and purpose are apparent. The specified period of ten days for registering the ordinance has nothing to do with the creation or existence of the lien. But the purpose in specifying the time within which the ordinance shall be recorded was to establish the order of priority of the claims to the property and to operate as a notice to other creditors as well as to purchasers and encumbrancers; that is, the delay specified has to do only with the effect of registry as relates to third parties.

" 'No mortgage or privilege shall hereafter affect third parties unless recorded in the parish where the property to be affected is situated.' C. C. art. 3347.

" 'Privileges are valid against third persons from the date of the recording of the act or evidence of indebtedness as provided by law.' C. C. art. 3275.

"Art. 3274 of the Code reads as follows: 'No privilege shall have effect against third persons unless recorded *in the manner required by law* in the parish where the property to be affected is situated. It shall confer no preference on the creditor who holds it, *over creditors who have acquired a mortgage,* unless the act or other evidence of the debt *is recorded within seven days* from the date of the act or obligation of indebtedness, when the registry is required to be made in the parish where the act was passed or the indebtedness originated, and within fifteen days if the registry is required to be made in any other parish of this state. It shall, however, have effect against all parties *from date of registry.*' [Italics ours.]

"In order that privileges shall *prime prior existing mortgages*, they shall be recorded within seven days under article 3274. That specified time applies to privileges generally. But that time is extended in many of the lien statutes enacted since the amendment of the Code in 1877, among them being Act 187 of 1920, the one now under consideration. Instead of seven days as provided in the Code for recording the evidence of indebtedness, the act here involved provides that the ordinance, which is the evidence of the indebtedness, shall be recorded within ten days. [Italics ours.]

"The purpose of the codal provisions *that privileges shall be recorded within seven days* is expressed, that is, *to make them prime or rank prior mortgages or liens.* The requirements in Act 187 of 1920 that the ordinance be registered *within ten days is for precisely the same purpose,* or, to use the exact language of the act, to make it 'prime all other claims except taxes.' [Italics ours.]

"The Code (Art. 3274) specifically provides that 'It shall, however, have effect against all parties from the date of its registry.'

"Act 229 of 1916, which provides for the creation, recognition and recordation of liens and privileges of laborers, contractors, etc., provides that any person claiming a privilege under the act 'shall file in the office of the recorder of mortgages of the parish in which the land is situated, a statement setting forth the amount claimed,' etc., and, 'Such statement must be filed within forty-five (45) days after the acceptance of the work by the owner.'

"In Robinson-Slagle Lbr. Co. v. Rudy et al., 156 La. 174, 100 So. 296, it was held, to quote paragraph 1 of the syllabus:

" 'Under Civil Code Art. 3274 and Act No. 229 of 1916 where material man neglects to record lien for more than 45 days after delivery, *recordation is effective only from time of recordation.*' [Italics ours.]"

In connection with that holding, the court quoted approvingly the following from the case of Le Goaster v. Lafon Asylum, 155 La. 158, 99 So. 22, 25: "For it is strictly in accordance with C. C. arts. 3273 and 3274 (as amended by Act No. 45 of 1877), that a mortgage or privilege *to give a preference over pre-existing claims should be recorded within a given delay, but that as to future claims it must be given full effect from the time of its recordation.*" (Italics ours.)

What is said above in the Urban Land Co. Case is not restricted in the opinion to an interpretation of Act No. 187 of 1920, but is applicable to Act No. 105 of 1921 (Ex. Sess.) and all other lien statutes, as clearly indicated by the following statement: "In so far as the issue here involved is concerned, we are considering Act 187 of 1920 as a lien statute. In construing lien statutes, all applicable laws on the same subject matter should be construed together so as to produce a harmonious system, if possible. The presumption is that a new law * * * was enacted with reference to the former general law."

Applying the legal principles announced in the Urban Land Co. Case by this court to the construction of Act No. 105 of 1921 (Ex. Sess.), it is evident that the paving liens of the city of New Orleans in this case cannot be permitted to prime the prior recorded mortgage and vendor's lien of the Conservative Homestead Association, as these paving liens were not recorded within the time prescribed by that statute.

Although it is held in the Urban Land Co. Case that, notwithstanding the ordinance assessing property for street paving was not recorded within ten days after its passage, the city acquired a lien and privilege against the assessed property; yet the decision in that case makes it clear that such recordation of the lien is not retrospective in its operation, but has effect against all parties from date of registry—that is to say, it primes only all future mortgages and liens that may be placed on the property assessed.

Because of the difference of opinion between counsel for relator and counsel for the city of New Orleans as to our holding in the Urban Land Co. Case, and because of the great importance to the city of New Orleans of the issues herein involved, we have reviewed at length the decision in the Urban Land Co. Case, so as to settle finally its true import and effect.

We find no error in the judgment of the Court of Appeal for the parish of Orleans.

Judgment affirmed.