### CARR v. EBY et al.

### No. 5531.

Court of Appeal of Louisiana. Second Circuit.

Dec. 3, 1937.

Sholars & Gunby and G. Allen Kimball, all of Monroe, for appellant.

Heard & Heard, of Monroe, for appellees.

HAMITER, Judge.

A special mortgage was executed by Mrs. Stella C. Eby on the 31st day of March, 1923, covering a number of lots in Stella C. Eby's second addition to the town of West Monroe, La. The act was duly recorded in the mortgage records of Ouachita parish, La., on said date of execution, and was reinscribed therein on March 27, 1933.

On June 7, 1928, the city of West Monroe, La., adopted Ordinance No. 794, under which an assessment for sidewalk paving was levied on six of the lots affected by the above mortgage, and on other lots not covered thereby. This ordinance, which was passed pursuant to the provisions of Act No. 147 of 1902, as amended, was not recorded in the mortgage records of Ouachita parish, La., until June 25, 1928, or eighteen days after its adoption. It authorized the payment of the assessment in installments and the issuance of certificates evidencing the deferred payments. Twenty per cent. of the assessment was paid by Mrs. Stella C. Eby, the owner of the lots, and certificates representing the balance were executed. Copies of these certificates were duly paraphed "Ne Varietur" by the clerk of court of Ouachita parish, La., and recorded in the mortgage records of his office on September 20, 1928.

As the owner and holder of the note which was secured by the aforedescribed mortgage, Robert L. Carr instituted foreclosure proceedings thereon, via ordinaria, and recovered judgment on March 30, 1935, against its maker, Mrs. Stella C. Eby, for the sum of $1,352.50, plus interest and attorney's fees, with recognition of the mortgage on the affected property. Subsequently, a writ of fieri facias issued under that judgment, and the mortgaged lots were seized and regularly advertised for sale at public auction.

The city of West Monroe and its transferees, on the 27th day of February, 1937, obtained judgments recognizing and rendering executory the sidewalk paving liens represented by the above-described certificates.

Pending the advertisement of the property under the foreclosure, the mortgage creditor caused the issuance of the rule involved in this proceeding directed to the holders of said paving certificates to show cause why his mortgage should not be recognized as being superior in rank to said paving liens. Also, he obtained an order

requiring the sheriff of Ouachita parish to retain the proceeds of the execution sale pending the final decision on the rule.

The brief of defense counsel informs us that the price for which the property was adjudicated at public auction was insufficient to satisfy both the special mortgage and the paving liens.

A consideration of the rule resulted in a judgment dismissing it. Plaintiff in rule appealed.

The appeal presents the question: Are the sidewalk paving liens, which exist by reason of the provisions of Act No. 147 of 1902, superior in rank to the pre-existing and regularly recorded mortgage of plaintiff in rule? The answer thereto requires an interpretation of section 4 of the statute just mentioned, which reads as follows: "Be it further enacted, etc., That the sum assessed against the real estate shall be due and collected within ten (10) days after the completion of the work and its acceptance by the councils of said cities and towns, and, if not paid within ten (10) days, the municipal authorities shall have the power to proceed by suit against the said owners and said real estate to collect the delinquent assessment, and the said municipality shall have a special privilege on said property or properties to secure the payment of the sum assessed against it, with six per cent (6 per cent) interest per annum thereon from the expiration of the said ten (10) days, until paid, which lien shall be the first privilege over all other claims except taxes, said privilege shall affect third persons from the date of the registry of the assessment in the mortgage book of the parish in which said real estate is situated, provided, that the town or city council instead of enforcing the said assessment as above fixed upon the payment in cash by the property owner of twenty per cent (20 per cent) of the amount due by said property owner, may in their discretion authorize the mayor to sign and issue certificates showing the amounts respectively due by the persons and properties on said sidewalks or curbing so paved or improved, which shall be payable in one, two, three, four and five years (or sooner, at the option of the owner of the property), with six per cent (6 per cent) interest per annum; interest payable annually; which said certificates (when a copy of same as recorded with the assessment, as aforesaid), duly paragraphed as being recorded by the Recorder of

Mortgages, shall be secured by the first privilege on the property prior to all other charges, except taxes, and may be transferred, carrying the lien and privilege of the transferee at their face value to the contractor in payment of the work and paving done on sidewalk or curbing, or portions thereof; provided, that where the work is done by the city or town, as provided in Section 2, the said certificate may be transferred to other persons, and shall enjoy the lien and privilege aforesaid."

It is well recognized that statutes creating liens and privileges must be strictly construed. State et al. v. C. S. Jackson & Co. et al., 137 La. 931, 69 So. 751; Succession of Coreil, 177 La. 568, 148 So. 711.

The general registry laws of this state are to be found in our Constitution and the Civil Code.

Article 19, section 19, of the Constitution of 1921, provides:

"No mortgage or privilege on immovable property, or debt for which preference may be granted by law, shall affect third persons unless recorded or registered in the parish where the property is situated, in the manner and within the time prescribed by law, except privileges for expenses of last illness, privileges arising upon the death of the owner of the property affected, and privileges for taxes, State, parish and municipal; provided such tax liens, mortgages and privileges shall lapse in three years from the 31st day of December in the year in which the taxes are levied, and whether now or hereafter recorded.

"Privileges on movable property shall exist without registration of same except in such cases as may be prescribed by law."

Provisions of similar import obtain in the Constitutions of 1879, 1898, and 1913.

In the Civil Code we find the following pertinent enactments: "Privileges are valid against third persons, from the date of the recording of the act or evidence of indebtedness as provided by law." Article 3273, Revised Civil Code.

"No privilege shall have effect against third persons, unless recorded in the manner required by law in the parish where the property to be affected is situated. It shall confer no preference on the creditor who holds it, over creditors who have acquired a mortgage, unless the act or other evidence of the debt is recorded within seven days

from the date of the act or obligation of indebtedness. When the registry is required to be made in the parish where the act was passed or the indebtedness originated and within fifteen days, if the registry is required to be made in any other parish of this State. It shall, however, have effect against all parties from date of registry." Article 3274, Revised Civil Code.

"No mortgage or privilege shall hereafter affect third parties, unless recorded in the parish where the property to be affected is situated." Article 3347, Revised Civil Code.

Our jurisprudence is replete with cases holding that a privilege shall have effect over a pre-existing mortgage when it is recorded within the delay prescribed by article 3274 of the Civil Code. Allen-Wadley Lumber Company v. Huddleston, 123 La. 522, 49 So. 160; Gleissner et al. v. Hughes, 153 La. 133, 134, 95 So. 529, and cases therein cited.

The Supreme Court in the case of City of Shreveport v. Urban Land Company, 177 La. 357, 148 So. 256, 258, was called upon to interpret the provisions of section 4 of Act No. 187 of 1920, a street paving lien statute. The section just mentioned provides: "That upon the final and satisfactory completion of the work, the municipal authorities shall accept it by ordinance, and provide for the assessment of all abutting real estate and railroad tracks and roadbeds in the amount due by the owner thereof according to the rule of apportionment stipulated in this act. A certified copy of such ordinance contained in the said assessment shall within ten days after its passage be filed for record in the office of the Recorder of Mortgages in the parish in which said assessed property is located, and the same when so filed and recorded shall operate as a lien and privilege in favor of said city or town, or its transferees, against the real estate and railroad tracks therein assessed, which lien and privilege shall prime all other claims except taxes."

The ordinance accepting the paving and levying the assessment in that case was recorded in the mortgage records more than ten days after its adoption. The question presented was whether or not it was necessary that the ordinance be recorded within ten days after its passage to bring into existence a lien and privilege in favor of the city against the abutting property which had been assessed with the cost of the paving. The matter of the affecting of pre-existing mortgages was not involved. In announcing the decision of the court, which was a negative answer to the foregoing question, Justice Odom had the following to say in his opinion, which, we think, lends assistance to a solution of the case at bar, viz.:

"In so far as the issue here involved is concerned, we are considering Act 187 of 1920 as a lien statute. In construing lien statutes, all applicable laws on the same subject matter should be construed together so as to produce a harmonious system, if possible. The presumption is that a new law relating to such subject was enacted with reference to the former general law.

"That part of section 4 of the act which provides that the ordinance levying the tax or local assessment shall be filed and recorded within ten days after the date of its passage, must be read and construed with reference to and in connection with the general registry laws of the state, which are found in the Civil Code. * * *

"In order that privileges shall prime prior existing mortgages, they shall be recorded within seven days under article 3274. That specified time applies to privileges generally. But that time is extended in many of the lien statutes enacted since the amendment of the Code in 1877, among them being Act 187 of 1920, the one now under consideration. Instead of seven days as provided in the Code for recording the evidence of indebtedness, the act here involved provides that the ordinance, which is the evidence of the indebtedness, shall be recorded within ten days.

"The purpose of the codal provisions that privileges shall be recorded within seven days is expressed, that is, to make them prime or rank prior mortgages or liens. The requirements in Act 187 of 1920 that the ordinance be registered within ten days is for precisely the same purpose, or, to use the exact language of the act, to make it 'prime all other claims except taxes.'

"The Code (Art. 3274) specifically provides that 'It shall, however, have effect against all parties from the date of its registry.'

"Act 229 of 1916, which provides for the creation, recognition and recordation of liens and privileges of laborers, contractors, etc., provides that any person claiming a privilege under the act 'shall file in the office of the recorder of mortgages in the parish in which the land is situated, a statement setting forth the amount claimed,' etc., and,

" 'Such statement must be filed within forty-five days (45) after the acceptance of the work by the owner.'

"In Robinson-Slagle Lumber Company v. Rudy et al., 156 La. 174, 100 So. 296, it was held, to quote paragraph 1 of the syllabus:

" 'Under Civil Code, Art. 2374 and Act No. 229 of 1916 where material man neglects to record lien for more than 45 days after delivery, recordation is effective only from time of recordation.'

"In connection with that holding, the Court quoted approvingly the following from the case of Le Goaster v. Lafon Asylum, 155 La. 158, 99 So. 22.

" 'For it is strictly in accordance with C. C. Arts. 3273 and 3274 (as amended by Act No. 45 of 1877), that a mortgage or privilege to give a preference over pre-existing claims should be recorded within a given delay, but as to future claims, it must be given full effect from the time of its recordation.'

"McQuillin, in his work on Municipal Corporations, Second Edition, Vol. 5, § 2255, speaking of local assessments for public improvements, says:

" 'Before a lien can exist, the formal steps prescribed by law to be taken, must be followed, *as filing within* the specified time.' (Italics ours.)

"In treating of the same subject matter, it is said in 44 C.J., 800, § 3405:

" 'The filing must be within the time prescribed by the statute.' "

Later, the Supreme Court had before it the case of Conservative Homestead Association v. Guglielmo et al., 178 La. 471, 151 So. 899, 901, which involved the interpretation of a paving statute, being Act No. 105 of the Extra Session of 1921. This statute granted a privilege on property for paving performed, and provided a period of delay for the recording of assessment statements so as to subordinate all pre-existing incumbrances to the said privilege. In holding that the paving liens under consideration in that case did not prime a pre-existing mortgage because of failure to record the assessment statements within the time prescribed by the statute, Justice Land, as the organ of the court, quoted approvingly and extensively from the case of City of Shreveport v. Urban Land Company, supra, and stated: "What is said above in the Urban Land Company Case is not restricted in the opinion to an interpretation of Act No. 187

of 1920, but is applicable to Act No. 105 of 1921 (Ex.Sess.), and all other lien statutes."

▆▆▆ Let us now consider section 4 of Act No. 147 of 1902, keeping in mind that it was enacted subsequent to codal article 3274, as amended. Let us also remember that the ordinance in the case presently under consideration was not recorded until eighteen days after its passage. The first portion of the section, among other things, authorizes the city to file suit to enforce collection of the full amount of the sidewalk paving assessment, and grants a special lien in its favor, "which lien shall be the first privilege over all other claims except taxes, said privilege shall effect third persons from the date of the registry of the assessment in the mortgage book of the parish in which said real estate is situated."

The second portion provides that the city may, instead of enforcing collection for the full amount, accept 20 per cent. of the assessment in cash and issue certificates of indebtedness for the balance, payable in installments, "which said certificates (when a copy of same as recorded with the assessment, as aforesaid), duly paraphed as being recorded by the Recorder of Mortgages, shall be secured by the first privilege on the property prior to all other charges, except taxes, and may be transferred, carrying the lien and privilege." (Certificates were issued in connection with the assessment in the instant case, as before stated. We do not pass upon the effect of copies of them not being recorded with the ordinance.)

In interpreting this section 4, it must be read in its entirety. By so reading it, and in the light of the facts of this case, we find it providing in effect that the certificates issued for the unpaid balance shall be secured by the first privilege on the property prior to all other charges, except taxes, and that said privilege shall affect third persons from the date of the registry of the assessment in the mortgage book of the parish in which said real estate is situated.

Now does this provision specifically and expressly provide a delay within which the ordinance must be recorded so that the privilege created will prime pre-existing mortgages? Obviously it does not. With this conclusion reached, it may then be said that the provision, in so far as such mortgages are concerned, is possible of one of two constructions; either, first, the privilege created is superior to all pre-existing mortgages, regardless of when the ordi-

nance levying the assessment is or may be recorded, in which event the provision is repugnant to and in direct contravention with article 3274 of the Civil Code, which requires registry of the ordinance within seven days after the passage of it to affect such mortgages, and by implication and of necessity repeals that codal article; or second, the privilege, under the expressed language of the section, shall prime those claims of third persons arising after the recordation of the assessment, while the matter of priority with reference to pre-existing incumbrances shall be governed by the provisions of said Civil Code, art. 3274, as amended.

We think that the first suggested construction is not proper. The lawmakers certainly did not intend that a city could, under the statute, indefinitely withhold recordation of a sidewalk paving assessment, and that on the recording of the act or ordinance, which might be performed years after its passage, the privilege would transcend in importance a valid and existing mortgage duly recorded before the paving was performed. Our registry laws play a momentous part with reference to real estate transactions, and our courts zealously protect persons purchasing immovable property on the face of the public records. Then, too, as before stated, the adoption of such a construction would be tantamount to holding that Civil Code, art. 3274, has been impliedly repealed by the act under consideration. Repeal by implication is not favored in law. Bennett-Brewer Hardware Co., Inc., v. Wakeman, 160 La. 407, 107 So. 286; Hart v. North British & Mercantile Insurance Company, 182 La. 551, 162 So. 177.

When the rule of strict construction, above enunciated, is applied to the statute, and when we view it in the light of that principle of law announced in the Urban Land Company Case, supra, that in construing lien statutes, all applicable laws on the same subject-matter should be construed together so as to produce a harmonious system, if possible, and a presumption exists that a new law relating to such subject was enacted with reference to the former general law, we are forced to the conclusion that the above-suggested second construction must be here adopted. In our opinion, the legislators, when enacting Act No. 147 of 1902, had no intention of repealing or disturbing the then existing general registry laws of Louisiana. We are satisfied that their prime purpose under that legisla-

tion was to create a privilege in favor of the city, and its transferees, to secure payment for public sidewalk improvements performed, and that they intended to rank that privilege according to the existing laws on that subject. When the statute was passed, the laws pertaining to the registry of privileges and mortgages, and their relative ranks, were unambiguous, sufficient, and satisfactory, and it must be presumed that such laws were familiar to the lawmakers. If a change therein had been intended, that intention would have been clearly manifested in the act, as was done in the street paving statutes of 1920 and 1921. It is therefore our holding that article 3274 must be read in connection with the provisions of Act No. 147 of 1902.

■ Accordingly, as the ordinance in question was not recorded in the mortgage records of Ouachita parish, La., within seven days from the date of its passage, the pre-existing mortgage was not subordinated to the statutory sidewalk paving liens.

The view which we have taken herein seems to be in accord with the early jurisprudence of this state as expressed in Dunning v. Coleman, 27 La.Ann. 47. In that case a conflict existed regarding the relative rank of a statutory paving lien and a pre-existing mortgage. The lien was created by an act of 1840, which provided: "That the privilege which secures the reimbursement as aforesaid for paving shall only exist when an account of said paving, certified by the treasurer and comptroller of the said municipality, shall be duly recorded in the office of the Register of Conveyances in this city, and provided said privilege shall exist for two years only after the tax has become due."

The general registry law in force at the time of the enactment of that statute and the arising of the paving lien under consideration was article 3274 of the Civil Code of 1825. It reads: "No privilege shall have effect against third persons unless recorded in the manner required by law in the parish where the property to be affected is situated. It shall confer no preference on the creditor who holds it, over creditors who have acquired a mortgage, unless the act or other evidence of the debt is recorded on the day when the contract was entered into." Civ.Code 1870 § 3274.

The privilege securing the paving was not recorded within the time required by the codal article. The court, in refusing to

subordinate the mortgage to the paving lien, stated:

"There is, therefore, no privilege until the work is done, and when the work is done the privilege interferes with no one until it has been duly recorded. 'Duly recorded' means recorded in compliance with the requirement of law. The requirement of the law is that it shall be recorded on the day when the evidence of debt was given. That day was the twenty-eighth of February, 1870. It was not recorded until the eighteenth day of May following.

"It was too late for it to have any effect upon the plaintiff's mortgage, for this statute of 1840 does not, in any manner, repeal or change the article of the Code above quoted, in regard to the time when the privilege shall be recorded. It simply fixes the length of time which the privilege is to endure."

It is therefore ordered that the judgment dismissing the rule herein be reversed and set aside, and there is now judgment in favor of plaintiff in rule decreeing his mortgage superior in rank to the sidewalk paving liens held by defendants in rule. It is further ordered that the sheriff of Ouachita parish, La., pay over to said plaintiff in rule the proceeds from the sale of the property covered by said mortgage in preference and priority to the claims of said defendants in rule. Cost of both courts shall be paid by appellees.