## ALCUS v. CITY OF NEW ORLEANS.*

### No. 17061.

Court of Appeal of Louisiana.  Orleans.

March 27, 1939.

George A. Dreyfous, of New Orleans, for appellant.

Francis P. Burns, City Atty., and Henry B. Curtis, Asst. City Atty., both of New Orleans, for appellee.

JANVIER, Judge.

Plaintiff, Irving Alcus, seeks to compel the erasure from the mortgage records of the Parish of Orleans of two paving liens recorded against real estate owned by him and described as follows:

"A certain lot of ground, situated in the First District, in Square No. 500, bounded by Prieur, Poydras, Lafayette and Johnson Streets, designated by the No. 16 on a plan of L. Bringier, Surveyor General, dated April 20, 1839, deposited in the office of D. L. McCay, late notary, and measuring 30 feet 3 inches front on Poydras Street, 29 feet 7 inches and 7 lines in width in

*Writ of certiorari denied by Supreme Court May 29, 1939.

the rear, by 94 feet 7 lines deep on the side line of lot 15 and 96 feet 3 inches 4 lines deep on the side line of lot 17."

From a judgment sustaining an exception of no cause or right of action and dismissing the suit, Alcus has appealed.

Since the matter is before us on these exceptions, we must assume the correctness of the allegations of fact contained in plaintiff's petition.

The paving, from which it is claimed by the City that the liens have resulted, was completed prior to April 16, 1927. It was done under contracts authorized by City ordinances adopted on June 23, 1925, which ordinances were authorized by Act No. 105 of the Extra Session of 1921 of the Legislature of Louisiana. This statute, in section 48, p. 225, provides that, when such paving is completed, the proportion of costs chargeable to each abutting property owner shall be determined and statements of assessments showing the names of assessed owners and the amounts due by each shall be furnished by the City Engineer to the Commissioner of Public Property, who, within ten days, shall furnish copies of said assessments to the Commissioner of Public Finance and that the Commissioner of Public Finance, within an additional ten days, shall cause the Recorder of Mortgages to inscribe the said statements among his records. The act further provides that (page 226):

"From the date that the said statement of assessments is filed in said mortgage office it shall act as a first lien and privilege on each specific real property thereon assessed, and said lien and privilege shall be superior to vendor's lien and any other privileges or mortgages, and shall remain in force for the amount due, in principal and interest, including costs of court, if any, for collecting, until final payment has been made.

"Said filing in the Recorder's office shall be full notice to each taxpayer and to each other person whom it may concern, of the assessment of the real properties listed on said statement of assessments, and that the said statement of assessments is on file in the office of the Commissioner of Public Finances and in the office where the mortgage records are kept, and that the cost of paving and repair of streets assessed against said properties are due and collectible as provided by law."

The statements of assessment were issued to the Commissioner of Public Property and were later certified to the Commissioner of Public Finance, but they were not recorded in the Mortgage Office until July 23, 1928, which was more than fifteen months after the completion of the work. At the time of the completion of the work, the widow and heirs of Thomas O'Neil were the assessed owners of the property, but, when the inscription of the paving liens was made on July 23, 1928, they had already disposed thereof to Kolman Berger by deed executed on June 15, 1927. The inscriptions of the liens were made in the name of the widow and heirs of Thomas O'Neil because of the provision in the statute to which we have already referred and which requires that such inscriptions should be made in "the names of the proprietors thereof as shown by the assessment rolls *at the time the statement is made*". (Italics ours.) Section 48.

Plaintiff, in his effort to compel the erasure of the inscriptions, makes the following contentions:

First, that, since the inscriptions were not made before the expiration of the 20-day period provided in the statute, no lien has resulted;

Second, that, since the widow and heirs of Thomas O'Neil were not the owners when the inscriptions were made, those inscriptions made in their names were of no effect at all;

Third, that, even if any effect can be given to the recordation of the liens, they cannot be permitted to prime the rights of Alcus in and to the property since he acquired it from Berger, who had acquired it before any inscriptions whatever were made in the mortgage records;

Fourth, that, when petitioner, Alcus, made the loan on the property and accepted the mortgage from Berger—which was on December 18, 1928—there were no such liens of record against the said property in the name of Berger and that, therefore, his (Alcus') rights cannot be affected by the recordation of the liens in the names of the widow and heirs of Thomas O'Neil, who, at that time, were not the owners of the property.

■ Passing, for the moment, the fact that the inscriptions were made in the O'Neil name, we first consider the effect of the failure of the City to cause the inscriptions to be made within the 20-day period provided by the statute. This failure does not result in the complete nullity

of the inscriptions and does not deprive the City entirely of its rights. This has already been decided in Shreveport v. Urban Land Company, 177 La. 357, 148 So. 256; in Conservative Homestead Association v. Guglielmo, et al., 178 La. 471, 151 So. 899; in Rubenstein v. Lemoine, La.App., 149 So. 155, and in Cook, et al. v. Lemoine, 178 La. 1014, 152 So. 689, and in Alcus v. Parkside Realty Company, 181 La. 773, 160 So. 409.

In the Guglielmo case there was involved this same statute (Act No. 105 of 1921, Ex.Sess.) and the court held that, though there is therein set forth a definite 20-day period, before the expiration of which the inscription should be made, still the lien comes into effect when the inscription is actually made, even though it is not made with the 20-day period, and that the only effect of delay is that the lien affects and primes only those whose rights are acquired after the inscription.

In Rubenstein v. Lemoine, supra, the Court of Appeal for the Second Circuit held that, even though a paving lien had not been recorded within the ten days fixed in the statute which was there involved, still, its recordation, when made, primed the rights of a subsequent purchaser.

The Supreme Court held to the same effect in Cook v. Lemoine, supra, saying [178 La. 1014, 152 So. 691]:

"In other words, the effect of a failure of the city to record the ordinance within the ten [10] days prescribed by the statute is not that the lien shall be lost, but that it shall not take rank, when it is recorded, over mortgages or liens previously recorded."

It appears, then, that that particular question is definitely settled and that the delay of the City in recording the inscriptions did not deprive it of its rights, but only subordinated it to the rights of anyone who may have become interested in the property prior to the tardy recordation.

But plaintiff claims that his right did come into existence prior to the recordation for the reason that he stands in the position of his vendor, Berger, who acquired the property on June 15, 1927, which, as has been shown, was more than one year prior to the day on which the inscriptions were made (July 23, 1928), and he claims that the liens do not affect him for the further reason that, though the inscriptions had already been made when he accepted the mortgage, they had been made in the name of a prior owner, with the result that they did not and could not have appeared on a mortgage and lien certificate obtained in the name of the then owner. And of this fact there can be no doubt, for no certificate in the name of Berger, dated December 18 or 19, 1928, could have shown those recordations, appearing, as they did, in the name of O'Neil.

We may say, in passing, that it was for the purpose of avoiding just such a situation that, in 1926, the Legislature enacted section 44 of Act No. 346, p. 693, under which there is now provided a system for the recordation of paving liens against the property itself, regardless of the name of the owner.

It appears, then, that no inscriptions appeared, or could have appeared, in the name of Berger at the time Berger granted the mortgage to Alcus. And it appears, also, that, when the O'Neil Estate sold to Berger on June 15, 1927, there were no such inscriptions of record against the O'Neils, or against anyone else. The only way, then, in which Alcus, on December 18, 1928, could have ascertained that there had been recorded against that property any such paving lien would have been for him to have obtained new certificates in the name of the Widow and Heirs of Thomas O'Neil, but dated more than eighteen months after they had parted with title to the property.

Alcus calls attention to Article 19, Section 19, of the Constitution of 1921 and to Article 3347 of the Civil Code and argues that, to permit the recordations of the liens to prime his rights would be to violate those two enactments, and, furthermore, it may be argued that, to permit them to have any affect against him would be to affect Berger since Berger is his warrantor. Therefore, contends counsel, to permit the recordation of those inscriptions to affect the property is to violate both the article of the Civil Code and the constitutional provision. The Codal article reads as follows:

"No mortgage or privilege shall hereafter affect third parties, unless recorded in the parish where the property to be affected is situated."

The Constitutional provision is almost the same:

"No mortgage or privilege on immovable property, or debt for which preference may be granted by law, shall affect third persons unless recorded or registered in

the parish where the property is situated, in the manner and within the time prescribed by law, except privileges for expenses of last illness, privileges arising upon the death of the owner of the property affected, and privileges for taxes, State, parish and municipal; * * *".

We first dispose of the possibility that it be contended that the Constitutional proviso regarding taxes makes it possible that a paving lien be permitted to affect third persons, although not recorded, by stating that it is well settled that such is not the case and that a paving lien is not a tax such as is contemplated by that proviso. It is well known that a tax need not be recorded at all. If the paving lien contemplated by the Act of 1921 could be given effect against third persons, even though not recorded, there would have been no necessity for the provision that, in order to affect third persons, such paving assessments should be recorded.

In Alcus v. Parkside Realty Company, supra, in which there was involved a lien claimed under this same statute, the Supreme Court ordered the inscription erased for the reason that it had not been made prior to the acceptance of the mortgage by the mortgagee, obviously treating such a paving lien as one not within the exception set forth in the Constitutional article.

So far as there may be involved the possible effect of the recordation upon the rights of Berger, we note from the many decisions cited above—and particularly the decision in Alcus v. Parkside Realty Company, supra—that it is well settled that those rights which came into being prior to the recordation of the inscriptions could not in any way be affected by those recordations.

But the argument is made that it will not affect the rights of Berger to permit the inscriptions to prime the rights of Alcus because Berger is no longer the owner of the property, having disposed of it as the result of the mortgage and subsequent foreclosure. But if Alcus can be compelled to pay these paving bills, it may be that he will have recourse against Berger and that Berger—now no longer the owner of the property—may not bring suit, as did Alcus in the Parkside Realty Company case, to compel the erasure of the liens. Therefore it appears that, if priority be given as against Alcus in the instant case, Berger may be immediately affected thereby.

We next consider the effect of the recordations on Alcus himself, regardless of any possible warranty of Berger. If these inscriptions be given effect against him as the owner of the property, then it appears that he—a third person—will have been adversely affected by the recordation of the liens in favor of the City and against the widow and heirs of Thomas O'Neil, although, as a matter of fact, he could have discovered those recordations only by searching the records in the name of all preceding owners after each had parted with title and by having certificates made in the names of all preceding owners, each dated not at the time of the disposal by each such former owner, but dated at some subsequent time long after the said former owner had disposed of title. This would be a most unreasonable requirement. The purpose of requiring recordations of liens is to make it possible for a person interested, with proper diligence, to discover that such liens have been recorded.

In Robinson-Slagle Lumber Company, Inc. v. Rudy, et al., 156 La. 174, 100 So. 296, 298, the Supreme Court discussed the reasons which require the giving of the name of the proper owner when recording building liens and quoted with approval the following language:

"* * * 'it is by the name of the owner only that the index to the records can be made, so as to guide in the examination for incumbrances upon the owner's title'. Kelly v. Laws, 109 Mass. 395."

This, we think, indicates that the Supreme Court is of the opinion that all that should be required of a person examining a title to determine whether any liens have been recorded against any particular owner should be to search the records as of the time of the disposal by that owner to see whether any liens have been recorded against him. It would be unsound to require that each subsequent purchaser again examine the lien records as of a date long after disposal by each former owner to determine whether, at some subsequent date, some lien had been recorded against a former owner. To give priority to the liens which, in this case, the City of New Orleans contends that it is entitled to, would be definitely to adversely affect the rights of both Berger and Alcus in violation of the plain intendment of the Constitutional provision and of the article of the Civil Code, both of which we have quoted above.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and that the matter be and it is remanded to the Civil District Court for the Parish of Orleans for further proceedings according to law and not inconsistent with the views herein expressed.

Reversed and remanded.

WESTERFIELD, J., dissents.