377 So.2d 892 (1979)
WESTERN WIRELINE SERVICES, INC.
v.
PECOS WESTERN CORPORATION et al.
No. 10370.
Court of Appeal of Louisiana, Fourth Circuit.
November 8, 1979.
*893 Krieger & Krieger, I. Jay Krieger, New Orleans, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Steven G. Durio, Liskow & Lewis, John M. Wilson, Larry M. Roedel, New Orleans, for defendants-appellees.
Before LEMMON, GULOTTA and BEER, JJ.
BEER, Judge.
The well organized brief filed in behalf of appellant, Western Wireline Services, Inc., accurately states the facts that define the single issue before us. We have underlined only to emphasize the uncontested facts that the action is in rem and the recordation took place more than two years subsequent to the performing of services and furnishing of materials:
"The instant case is one for recognition of a privilege under the Louisiana Oil Well Lien Act, La. R.S. 9:4861 for work performed and supplies provided under contract with defendant, Monte Garnette & Associates, Inc. on State oil and gas lease No. 3327.
Action against defendant, Monte Garnette & Associates, Inc. is on open account. Action against all other defendants is in rem only, for recognition of the privilege provided by on the Oil Well Lien Act on property owned by them.
Judgment by default was rendered against defendant, Monte Garnette & Associates, Inc., and they are not a party to this appeal. Plaintiff-appellant's suit was dismissed as to the remaining defendants on exceptions of no cause of action. This appeal is taken from the two judgments of dismissal, one in favor of defendant-appellee Pecos Western Corporation signed January 26, 1979 and one in favor of the remaining defendant-appellees signed on January 17, 1979.
On various dates during the month of April, 1976 or thereabout plaintiff-appellant performed various services and furnished various supplies under contract with defendant Monte Garnette & Associates, Inc. in connection with the operation of a certain well or wells located on state lease No. 3327. Plaintiff-appellant has filed for record in the office of the Recorder of Mortgages for the Parish of Orleans a notice of lien on July 10, 1978."
From a judgment maintaining the exception of no cause of action filed by Pecos Western Corporation, Western Wireline Services, Inc. appeals.
Thus, we are asked to decide if a lien or privilege created by LSA-R.S. 9:4861, et seq., requires recordation within a limited time period or, at least, prior to two years and three months after the work was performed.
*894 Appellant contends that LSA-R.S. 9:4862 on its face does not require the lien to be recorded within 90 days of completion in order to be effective and cites Continental Casualty Co. v. Associated Pipe & Supply Co., 310 F.Supp. 1207 (D.C.La.1969), which observed:
"The clear implication is that if you chose not to record you will lose that special ranking of your privilege but not the lien. Nothing in the statute suggests anything to the contrary. The Louisiana Constitution Article 19, Section 19, provides that `Privileges on movable property shall exist without registration of same, except in such cases as may be prescribed by law.' The legislature could have specifically provided that registration was required as it did in the Private Works Act but it did not choose to do so. Consequently, since the statute does not so provide, recordation is not required."
The Fifth Circuit Court of Appeals, in Continental Casualty Co. v. Associated Pipe & Supply Co., 447 F.2d 1041 (5th Cir. 1971), seemed to agree:
"The district court was eminently correct, for the rule in Louisiana is that where a statute grants a priority to a lien recorded within a certain time, failure to record within that time forfeits the priority only. If filed later, it is given full effect from the date of recordation.13
13 Le Goaster v. Lafon Asylum, 1923, 155 La. 158, 99 So. 22; Robinson-Slagle Lumber Co. v. Rudy, 1924, 156 La. 174, 100 So. 296; City of Shreveport v. Urban Land Co., 1933, 177 La. 357, 148 So. 256; Conservative Homestead Assoc. v. Guglielmo, 1933, 178 La. 471, 151 So. 899; Alcus v. Parkside Realty Co., 1935, 181 La. 773, 160 So. 409; Conservative Homestead Assoc. v. Ullrich, 1935, 182 La. 806, 162 So. 628."
Later, in Beacon Gasoline Co. v. Sun Oil Co., 455 F.Supp. 506 (D.C.La.1978), another federal district court concluded that recordation of an oil well privilege within 90 days of completion of services was not necessary to preserve the privilege against third persons, finding that the conditional language of the statute applies only to the question of ranking, and not to the very existence of the privileges.
Comparison to the Private Works Act, LSA-R.S. 9:4801, et seq., does reveal more stringent recordation requirements:
"Every person having a claim ... shall record a sworn statement ..., which ... recordation shall be made not later than 30 days after recordation... of notice of acceptance... If at the expiration of said period of 30 days, there are not claims recorded, the Clerk of Court or Recorder of Mortgages shall ... cancel .. the inscription of said contract, ... and all liability of the said owner for labor and material employed in the said work shall cease, and his property shall not thereafter be subject to privileges growing out of claims arising under the said building contract, ..." (Emphasis supplied.)
In light of this difference between R.S. 9:4801, et seq. and R.S. 9:4861, et seq., appellees' reliance on Jeffers Trust v. Justice, 253 So.2d 234 (La.App. 4th Cir. 1971), is not, standing alone, persuasive. In Jeffers, we ordered the liens cancelled since the 60-day period provided by the act had run. The court applied the doctrine of "substantial completion" in order to prevent the time for filing liens from being unreasonably extended, thus supporting Louisiana's fundamental policy of strict construction of lien statutes.
But considering this, we are much impressed by that portion of appellees' brief which makes the following strong argument:
"Liens and privileges are exceptional rights granted to classes of persons whom the law deems entitled to special protection. These classes are granted the ability to enforce claims for payment of goods and services even in the absence of the contractual privity which would be necessary for any other person to enforce such a claim. However, in return for this exceptional treatment, the law limits the time within which the claimant may exercise the right. This limitation accomplishes the salutary purpose of relieving the owner of such property from the dangers *895 of uncertainty and double liability which might otherwise be created. The usual practice is for the owner to withhold a part of the amount due to the general contractor during the period within which the lien may be claimed. This practice insures that the owner will not thereafter be liable for the same amount, by virtue of the lien, to a subcontract.
Thus the law exacts a quid pro quo for the exceptional consideration given to the lien claimant, and exhibits a wise even handedness which protects the owner of the property from double exposure. Were the Oil Well Lien Statute interpreted so as to allow the existence of a lien without recordation and indefinitely, this balance between the rights of the lien claimant and the owner of the immovable would be destroyed. The owner would be subject to the risk of double liability, and would remain forever in uncertainty about his ability to safely pay his general contractor." p. 6.
Other than the Oil Well Lien Act, the only Louisiana law which appears to be applicable to this case is LSA-R.S. 9:2721-2724, dealing with registry of instruments affecting immovables.[1]
LSA-R.S. 9:2721:
"No sale, contract, counterletter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless or until filed for registry in the office of the parish recorder of mortgages of the parish where the land or immovable is situated; and neither secret claims or equities or other matters outside the public record shall be binding on or affect such third parties." (Emphasis added.)
See also National Bank of Commerce v. Justice, 212 So.2d 711 (La.App. 4th Cir. 1968).
In Mercantile National Bank of Dallas v. J. Thos. Driscoll, Inc., 195 So. 497 (La.1940), the Louisiana Supreme Court defined the purpose of the Oil Well Lien Act as follows:
"It is clear that the purpose of the act is to require notice of the claim to be given by setting forth the nature and amount thereof, as well as the property upon which the lien is claimed, in order to apprise third persons of the kind of a lien which is claimed, what property is affected, and to fix the limit of the claim so that no more can be claimed." (Emphasis added.)
Appellant's contended interpretation would have the effect of allowing lien rights to exist against immovables for an indefinite period, yet third parties would not be protected under the Public Records Doctrine. Moreover, LSA-C.C. art. 17 states that all "laws in pari materia ... must be construed with reference to each other." LSA-R.S. 9:4865 of the Oil Well Lien Act states:
"Unless interrupted by suit thereon, the privilege shall prescribe and become ineffective one year from the date of recordation."
Thus, Section 4865 places an absolute time limit on the exercise of litigious rights by the recording lien claimant. Since the time limit of Section 4865 begins to run at "recordation," the time limit would be rendered essentially meaningless if extended indefinitely by the consistent failure to record.
In summary, the Legislature has provided a statute with recordation requirements that are not literally conclusive. Our brothers on the federal courts have concluded that recordation within 90 days of completion of work is mandatory only for the establishment of lien priority rather than the existence of the lien itself.
The only Louisiana case to deal with the section in question was the Mercantile case, which was asked to decide whether a single recorded lien notice was sufficient to preserve a lien covering several contiguous *896 tracts. The court in Mercantile cited Altom v. Mount Vernon Oil Gas Co., 174 La. 775, 141 So. 457, in dealing with the purpose of the recordation section. Besides the purpose of notice to third parties quoted above, the court explained:
"Section 2 of the act does not require that the notice of claim shall be sworn to, consequently the registry of the claim is not intended as prima facie proof of its amount, but only to give the lien precedence over any subsequent mortgage or lien on the property." (Italics ours.)
However, the fundamental principle of strict construction of lien statutes,[2] combined with the Louisiana concept that rights against immovables must be recorded within a certain time to be effective and further combined with the uncontested fact that recordation did not take place until more than two years after the completion date of the work for which the lien is claimed, are strong directional signals for affirmation. Although the language of the act does not make it clear that recordation must take place within the 90-day limit in order for the lien to exist at all, the above principles do, we believe, at the very least, mandate that liens cannot exist indefinitely without recordation. Perhaps most compelling, is the fact that the statute contains a clear provision requiring suit be filed within one year of recordation if the lien is to be enforceable. On that basis, we cannot, on the uncontroverted facts here existent, permit the lien to stand.
Accordingly, the judgment of the Civil District Court for the Parish of Orleans is affirmed, at appellant's cost.
AFFIRMED.
LEMMON, J., concurs and assigns reasons.
LEMMON, Judge, concurs and assigns reasons.
La.Const.1921, Art. 19, § 19, which controlled the validity of R.S. 9:4861 et seq. at the time of the statute's enactment, required (with certain exceptions) that a privilege against immovable property, in order to affect third persons, had to be "recorded in the manner and within the time prescribed by law". The constitutional provision was apparently based on the public policy consideration that a privilege, which confers an exceptional status in derogation of common rights, cannot exist indefinitely and must be perfected within express time limitations.
If R.S. 9:4861 et seq. is interpreted to accord a privilege for an indefinite period, the statute is constitutionally infirm. Since a statute subject to interpretation must be construed in the manner which renders it to be constitutional, and since a statute granting a privilege must be interpreted strictly, the statute should be interpreted to require recordation within 90 days, not only for its ranking, but also for its validity.
NOTES
[1] There is no affirmative showing that we are here involved with anything other than immovables. During oral argument, it became clear that there was no "production" flowing from the lease.
[2] Cases for authority of strict construction of lien statutes:

1. Louisiana Nat. Bank of Baton Rouge v. Triple R Contractors, Inc., 345 So.2d 7 (La. 1977).
2. National Bank of Commerce v. Justice, 212 So.2d 711 (La.App. 4th Cir. 1968).
3. Martinez v. Therma-King Sales & Service Division of Transport Refrigeration of Louisiana, Inc., 346 So.2d 798 (La.App. 1st Cir. 1977), writ denied 349 So.2d 884.