**BEACON GASOLINE COMPANY**

v.

**SUN OIL COMPANY, Thomas S. Sale, Jr., Amoco Production Company, and Tidewater Compression Service, Inc.**

Civ. A. No. 750894.

United States District Court,
W. D. Louisiana,
Shreveport Division.

Aug. 28, 1978.

John W. Wilson, Oliver & Wilson, Monroe, La., for claimants Sun Oil and Thomas S. Sale, Jr.

Robert K. Mayo, Green, Ayres & Mayo, Shreveport, La., for Amoco Production Co.

Michael F. Kelly, Brouillette & Kelly, Marksville, La., for Tidewater Compression.

DAWKINS, Senior District Judge.

## RULING ON MOTIONS

This case began as a fairly complicated statutory interpleader involving numerous claims to production proceeds from a gas well in Claiborne Parish, Louisiana. The action was instituted by the purchaser of production, Beacon Gasoline Company, to resolve conflicts in working interest ownership and to satisfy certain privileges which were claimed. Most of the claimants now have resolved their differences and have been dismissed. The remaining parties are Sun Oil Company, Thomas S. Sale, Jr., Amoco Production Company, and Tidewater Compression Service, Inc. These parties are now before the Court on cross motions for summary judgment [1] to determine proper distribution of the remaining proceeds.

Sun, Amoco, and Sale are mineral lessees of property where the well is located. Tidewater, on the other hand, furnished compression services to the well. Tidewater claims a privilege on the production proceeds under the Oil Well Privilege Statute, La.R.S. 9:4861, et seq., for the unpaid balance due for services rendered, for the cost of preparation and recordation of the privilege, and for 10% attorney's fees. Sun, Amoco, and Sale, in turn, filed cross-claims for damages for alleged wrongful removal by Tidewater of Tidewater's equipment. After review of the entire record, the briefs and affidavits filed by the parties, we are convinced, for reasons to follow, that Tidewater is entitled to have its privilege recognized and to be paid in preference to Sun, Sale, and Amoco, and the cross-claims of Sun, Amoco, and Sale are without merit.

---

1. Amoco Production Company has not filed a motion for summary judgment. However, its claims necessarily will be resolved by disposition of the cross-motions.

## FINDINGS OF FACT

The material facts are undisputed. In early 1973, Sun, Sale, and Midwest Oil Corporation assigned certain leases to Span America Oil Corporation, reserving a percentage royalty.[2] (Midwest's interest was acquired later by Amoco.) Span contracted with Beacon for gas gathering and processing on August 6, 1973, and, on November 19, 1973, Span and Tidewater entered into an agreement whereby Tidewater would furnish compression services. A compressor and engine subsequently were installed and used in operation of the well.

Beginning in July of 1974, Span stopped paying Tidewater's invoices. By letter of February 14, 1975, Tidewater informed Span of its intent to discontinue services unless the invoices were paid. No payment was received, and Tidewater, on or about March 4, 1975, removed a magneto from one of its machines, thereby rendering it inoperable. On or about May 1, 1975, Tidewater removed all of its equipment.

On April 24, 1975, after an earlier default by Span in royalty payments, Span reassigned its interests to Sun, Sale, and Amoco. Production was resumed on May 1, 1975, with a different company providing compression services.

On July 21, 1975, Tidewater filed its claim of privilege and gave notice to Beacon of the filing. Then, on August 7, 1975, Beacon commenced this interpleader action.

## CONCLUSIONS OF LAW

No Louisiana cases have been found which address directly the major issues before us, which are:

1. Whether failure to record the privilege within 90 days of completion of services is necessary to preserve the privilege;

---

2. Under Louisiana law, such an agreement is categorized as a sublease. See *Smith v. Sun Oil*, 165 La. 907, 116 So. 379 (1928), and its progeny; see also La.R.S. 31:127 and the comments thereunder.

2. Whether an answer in an interpleader action in Federal Court is sufficient to interrupt one-year prescription on enforcement of the privilege.

■ La.R.S. 9:4861 [3] is the fountainhead of the oil well privilege. It details the property subject to the privilege, the parties by whom the privilege may be claimed, and the types of debts secured by the privilege. Section 4862,[4] on the other hand, provides a 90-day delay after completion of services for the filing of privileges. In *Continental Casualty Co. v. Associated Pipe & Supply Co.*, 447 F.2d 1041 (5th Cir. 1971), the Court, affirming the District Court, held that Section 4862 recordation only affected ranking of the privilege, not the existence of the privilege. Although the Court there was concerned with existence of the privilege only as between the parties to an agreement, the conditional language of the statute persuades us that the *Continental* rule applies as well when third per-

---

3. Oil, Gas, and water wells privilege, R.S. 9:4861 et seq.:

"PART II. OIL, GAS, AND WATER WELLS
SUB–PART A. IN GENERAL

"§ 4861. Privilege for labor, services or supplies

Any person who performs any labor or service in drilling or in connection with the drilling of any well or wells in search of oil, gas or water, or who performs any labor or service in the operation or in connection with the operation of any oil, gas or water well or wells, has a privilege on all oil or gas produced from the well or wells, and the proceeds thereof inuring to the working interest therein, and on the oil, gas or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks, and other structures thereto attached or located on the lease, for the amount due for labor or service, in principal and interest, and for the cost of preparing and recording the privilege, as well as ten per cent attorney's fees in the event it becomes necessary to employ an attorney to enforce collection. Any person who does any trucking, towing, or barging, or who makes any repairs, or furnishes any fuel, drilling rigs, standard rigs, machinery, equipment, material or supplies for or in connection with the drilling of any well or wells in search of oil, gas or water, or for or in connection with the operation of any oil, gas, or water well or wells, whether or not a producing well is obtained and whether or not such materials, machinery, equipment, services and supplies are incorporated in or become a part of the completed oil, gas or water well, has a privilege on all oil or gas produced from the well or wells and the proceeds thereof inuring to the working interest therein and on the oil, gas or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks and other structures thereto attached for drilling, equipment and operation of the well or lease, for the amount due for such trucking, towing, barging, repairs, fuel, drilling rigs, standard rigs, machinery, equipment, material, or supplies, in principal and interest, and for the cost of preparing and re-cording the privilege, as well as ten per cent attorney's fees in the event it becomes necessary to employ an attorney to enforce collection thereof. This privilege is second in rank only to the privilege granted in favor of laborers. As amended Acts 1956, No. 100, § 1; Acts 1958, No. 23, § 1."

4. "§ 4862. Notice of privilege to be filed within ninety days; content

If a notice of such claim or privilege, setting forth the nature and amount thereof, is filed for record and inscribed in the mortgage records of the parish where the property is located within ninety days after the last day of the performance of the labor or service, in the case of laborers, within ninety days after the last day of the doing, making, or performing of such trucking, towing, barging, or repairing, in the case of claimants doing, making, or performing such services, and in the case of furnishers of fuel, drilling rigs, standard rigs, machinery, equipment, material or supplies, within ninety days from the last date of the delivery of such fuel, drilling rigs, standard rigs, machinery, equipment, material or supplies to the well or wells, the privileges are superior to all other privileges or mortgages against the property, except taxes or a bona fide vendor's privilege, or privileges or mortgages filed or recorded prior to the date on which the first labor, service, trucking, towing, barging, repairs, fuel, drilling rigs, standard rigs, machinery, equipment, material or supplies covered by the privilege herein granted is furnished. The ninety day period shall not commence to run, and shall be suspended, so long as the person entitled to the privilege shall continue to furnish labor, services, fuel, materials, and supplies, or any of those things in the same oil field in which the well or wells subject to the privilege are located, to the same owner, operator, producer, or driller of the well or wells, and whether the labor, services, fuel, materials and supplies, or any of those things are furnished to the well or wells subject to such privilege or to other well or wells. The notice of such claim or privilege shall contain a description of the leased property of such nature as to make the leased property reasonably subject to identification. As amended Acts 1956, No. 100, § 4."

sons are involved. Thus we hold that recordation within 90 days of completion of services is not necessary to *preserve* the privilege against third persons. Since the ranking of claims is no longer an issue here, it is unnecessary that we decide whether the privilege was recorded within the 90-day period.

Section 4865 [5] of the Oil Well Privilege Statute provides that, unless interrupted by suit, the privilege is effective only for one year after recordation. Here, Tidewater answered Beacon's interpleader action well within a year of recordation of its privilege. However, it did not file a separate suit on the privilege within the year.

Again, the Louisiana Courts have not addressed directly the issue of whether a federal interpleader action will interrupt the one-year prescription. Section 4866 provides a statutory method of enforcement of the privilege,[6] but it has been held that this method is not exclusive. *Frank's Casing Crew & Rental Tools, Inc. v. Carthay Land Co.,* 212 So.2d 161 (La.App. 4th Cir. 1968). In addition, a Louisiana interpleader action (concursus) has been held to constitute a "suit" for the purposes of the Louisiana Private Works Act, La.R.S. 9:4812. *Federal National Bank & Trust Co. v. Calsim, Inc.,* 340 So.2d 611 (La.App. 4th Cir. 1977). It is our considered view that an answer to a federal interpleader action should constitute a "suit" for the purposes of interrupting the one-year prescription of Section 4865.

Sun and Sale argue that allowing a federal interpleader action to constitute a suit under § 4865 will cause havoc among title examiners. While this admittedly is a problem, it may be noted that ordinarily most interested persons will be parties to such an action and thus have notice of any peremptive interruption. To the extent that the problem remains, the remedy is one for the Legislature to provide, as it has in the Private Works Act with the requirement of *lis pendens* notice. La.R.S. 9:4812.

Finally, it is apparent that Tidewater had a contractual right to remove its equipment.[7]

Tidewater held a valid privilege when it answered the interpleader action. The answer to the action served to interrupt the one-year efficacy of the privilege. Tidewater, therefore, is entitled to have its privilege recognized and to be paid in preference to Sun, Sale, and Amoco. Moreover, Tidewater had a contractual right to remove its equipment. Tidewater's motion for summary judgment therefore is granted, and the motion for summary judgment filed by Sun and Sale therefore is denied.

THUS DONE AND SIGNED, in Chambers, at Shreveport, this 28th day of August, 1978.

---

**5.** "§ 4865. Effective period

Unless interrupted by suit thereon, the privilege shall prescribe and become ineffective one year from the date of recordation."

**6.** "§ 4866. Enforcement of privilege

Any creditor whose claim is secured by the privilege granted under R.S. 9:4861 may enforce his privilege by the writ of sequestration, without the necessity of furnishing security therefor, by swearing to the amount due him. As amended Acts 1960, No. 31, § 1."

**7.** "In case of default of any of the terms of this contract,

Tidewater, their agents or servants, may at its option, enter the premises where listed equipment is used or any premises where said equipment may be found, and remove same therefrom, without notice or demand and without being guilty of any trespass or wrong. Tidewater shall not be liable for any damage because of such removal of equipment. . . ."