490 So.2d 1158 (1986)
GENINA MARINE SERVICES INC., Plaintiff-Appellant,
v.
MARK PRODUCING CO., Defendant-Appellee.
No. 85-705.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1986.
Writ Denied October 3, 1986.
H.P. Rowley, III, Covington, for plaintiff-appellant.
Patrick W. Gray, of Liskow & Lewis, and Charles B. Griffis, Lafayette, for defendant-appellee.
Before GUIDRY, DOUCET and MANSOUR,[*] JJ.
GUIDRY, Judge.
Plaintiff, Genina Marine Services, Inc. (Genina), filed suit against Mark Producing Co. (Mark), seeking recognition and enforcement of a lien and privilege against certain mineral leases, the wells and equipment, and the resulting mineral production therefrom, pursuant to La.R.S. 9:4861 et seq.[1] In this suit, Genina alleges that it performed towing and other services for Mark in the amount of $57,250.00 from *1159 July 1, 1982 thru September 25, 1982 in connection with the drilling and/or production of certain oil and gas wells located on South Marsh Island, Block No. 161, on the Outer Continental Shelf. Genina alleged that it had not been paid for services rendered. Genina further alleged that it had previously filed a notice of privilege under the Oil Well Lien Act on January 10, 1984 in the mortgage records of Iberia Parish, the parish where the services were allegedly performed. This suit was filed on January 4, 1985, some twenty-seven (27) months after performance of the last services.
Defendant filed exceptions of prescription, no right of action, payment, lack of adequate lease description in notice of privilege, and no cause of action. Mark urged that, since the services were allegedly performed on the Outer Continental Shelf, outside the territorial limits and jurisdiction of the State of Louisiana, no lien was created by plaintiff's filing in the Iberia Parish mortgage records and, therefore, plaintiff's petition failed to state a cause of action. Both parties agree that the wells are located on the Outer Continental Shelf, outside the territorial jurisdiction of Louisiana.
The trial court sustained the exception of no cause of action and dismissed plaintiff's suit. Plaintiff appealed.
We first consider the issue as to whether the Louisiana Oil Well Lien Act (Well Lien Act), La.R.S. 9:4861, et seq., applies to property located on that portion of the Outer Continental Shelf adjacent to the boundaries of the State of Louisiana. In sustaining Mark's exception of no cause of action, the trial court, relying on our Supreme Court's decision in P.H.A.C. Services, Inc. v. Seaways International, 403 So.2d 1199 (La.1981), held that the Well Lien Act could not be applied to property located on the Outer Continental Shelf. For the following reasons, we find error in this ruling.
43 U.S.C. 1333(a)(2)(A) provides in pertinent part as follows:
"To the extent that they are applicable and not inconsistent with ... Federal laws and regulations ... the civil and criminal laws of each adjacent State ... are declared to be the law of the United States for that portion of the subsoil and seabed of the Outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the Outer Continental Shelf...." (Emphasis ours).
The Well Lien Act creates a privilege on all oil or gas wells and appurtenances thereto and the oil or gas produced from such wells in favor of any person who performs any labor or services in connection with the drilling or operation of such wells. Defendant suggests no reason, and we know of none, why the Well Lien Act should not be applied to services performed in connection with the drilling or operation of wells located on the Outer Continental Shelf. The Well Lien Act has not been shown to be inconsistent or in conflict with any Federal laws or regulations. Therefore, it necessarily follows that, pursuant to 43 U.S.C. 1333(a)(2)(A), the Well Lien Act is applicable to oil or gas wells etc. located on that portion of the Outer Continental Shelf, which would be within the area of the State of Louisiana if its boundaries were extended seaward to the outer margin of the Outer Continental Shelf. Louisiana's Well Lien Act was found applicable to the Outer Continental Shelf in Continental Casualty Co. v. Associated Pipe & Supply Co., 279 F.Supp. 490 (E.D. La.1967), affirmed in part, vacated in part, 447 F.2d 1041 (5th Cir.1971), and in a recent, as yet unreported, decision by our brethren of the Fourth Circuit, i.e., Louisiana Materials Co., Inc. v. Atlantic Richfield Company, 486 So.2d 776 (La.App. 4th Cir.1986).
The trial court's reliance on P.H.A.C., supra, for its contrary holding, was misplaced. As succinctly stated by the court in Louisiana Materials Co., Inc., supra:
"P.H.A.C. is not in conflict with these federal decisions. The property in question in P.H.A.C. was located off the Texas *1160 coast, and, therefore, would not be subject to any Louisiana law. Any attachment of property in that case should have been accomplished by means of Texas law."
It is not disputed that plaintiff seeks recognition of a lien and privilege on a well owned by Mark, located at South Marsh Island, Block 161, in connection with services allegedly performed by plaintiff for Mark in the drilling or operation of such well. It is likewise undisputed that South Marsh Island, Block 161 is on the Outer Continental Shelf but within the area of the State of Louisiana if its boundaries were extended seaward to the outer margin of the Outer Continental Shelf. Accepting these allegations as correct, we conclude that plaintiff's petition states a cause of action and the trial court erred in concluding otherwise.
Although evidence was adduced in connection with plaintiff's other exceptions, the trial court did not consider the other exceptions after finding defendant's exception of no cause of action to be well founded. Since the record is complete, rather than remand this matter to the trial court, we will consider defendant's other exceptions.
We next consider the more troublesome issue of prescription.
The facts pertinent to a determination of this issue are not in dispute. Briefly stated, plaintiff allegedly performed services for Mark from July 1, 1982 through September 25, 1982, the latter date being the last day on which any services were performed. Genina did not record a notice of privilege until January 10, 1984, over fifteen months after the last performance of services. Suit in this matter was not instituted until January 4, 1985, some twenty-seven (27) months after performance of the last services.
Mark urges that any cause of action which Genina might have had under the provisions of La.R.S. 9:4861 et seq. has prescribed by reason of the inordinate delay between the alleged provision of services, the filing of the notice of privilege and the ultimate filing of this suit. In opposition, Genina urges that recordation of a notice of privilege under the Well Lien Act is not required; in any event, the notice was timely filed; and, suit was instituted within one (1) year of the recordation of the notice of privilege.
La.R.S. 4862, at the time the alleged services were performed by Genina, read as follows:[2]
"If a notice of such claim or privilege, setting forth the nature and amount thereof, is filed for record and inscribed in the mortgage records of the parish where the property is located within ninety days after the last day of the performance of the labor or service, in the case of laborers, within ninety days after the last day of the doing, making, or performing of such trucking, towing, barging, or repairing, in the case of claimants doing, making, or performing such services, and1 in the case of furnishers of fuel, drilling rigs, standard rigs, machinery, equipment, material or supplies, within ninety days from the last date of the delivery of such fuel, drilling rigs, standard rigs, machinery, equipment, material or supplies to the well or wells, the privileges are superior to all other privileges or mortgages against the property, except taxes or a bona fide vendor's privilege, or privileges or mortgages filed or recorded prior to the date on which the first labor, service, trucking, towing, barging, repairs, fuel, drilling rigs, standard rigs, machinery, equipment, material or supplies covered by the privilege herein granted is furnished. The ninety day period shall not commence to run, and shall be suspended, so long as the person entitled to the privilege shall continue to furnish labor, services, fuel, materials, and supplies, or any of those *1161 things in the same oil field in which the well or wells subject to the privilege are located, to the same owner, operator, producer, or driller of the well or wells, and whether the labor, services, fuel, materials and supplies, or any of those things are furnished to the well or wells subject to such privilege or to other well or wells. The notice of such claim or privilege shall contain a description of the leased property of such nature as to make the leased property reasonably subject to identification."
La.R.S. 9:4865 provides as follows:
"Unless interrupted by suit thereon, the privilege shall prescribe and become ineffective one year from the date of recordation."
In I.E. Miller of Eunice, Inc. v. Source Petroleum, Inc., 484 So.2d 239 (La.App. 3rd Cir.1986), this court considered the issue whether La.R.S. 9:4861 et seq. required recordation of notice of the lien within the limited time provided in La.R.S. 9:4862 in order for the lien to be valid. The Miller court ultimately concluded, after reviewing conflicting holdings on this issue by the Federal courts and Louisiana's Fourth Circuit Court of Appeal, that failure to record within the time limit set forth in Section 4862 forfeits the priority or ranking of the privilege but not its viability.[3] We have reconsidered this issue and conclude that our holding in Miller, supra, is correct.
Although we adhere to our decision in Miller, supra, we nonetheless conclude that plaintiff's claim has prescribed and that defendant's exception is well founded.
Albeit the validity of a lien under La.R.S. 9:4861 et seq is unaffected by failure to record during the time limit provided in Section 4862, if unrecorded during that limited period, the privilege is lost unless suit is filed within one year from the date on which the last services are performed. As we stated in Miller, supra:
"It has been suggested that an interpretation of LSA-R.S. 9:4865 may contradict a finding of validity if unrecorded within the statutory time limit. LSA-R.S. 9:4865 provides that the privilege is lost unless suit is filed within one year from the date of recordation. We agree with the dissent in C-Craft Marine Serv. that although this statute appears to require recordation, this one-year period merely provides an outer limit for exercising the privilege. To be more precise, the longest period which could elapse before filing suit is one year plus the recordation period in the case where the claimant records his claim on the last day of the statutory time period provided in LSA-R.S. 9:4862. If the privilege is unrecorded, the claimant has one year from the last service performed to exert the privilege. This interpretation protects both the claimant and the owner and third parties against whom the claim is made."
Stated another way, if the claimant records a notice of privilege within the time limit of Section 4862, the privilege loses its viability unless suit is filed within one year of recordation. On the other hand, if notice of privilege is not recorded within the time limit, the claimant loses the additional time which would have been earned by timely recordation and the privilege is lost unless suit is filed within one year of the last day on which services are performed. To decide otherwise, i.e., one year following untimely recordation of notice irrespective of the length of delay, would clearly be in derogation of the established principle that a privilege cannot exist indefinitely.
In the instant case, notice of privilege was not timely recorded. Suit was not *1162 filed within one year of the day when the last services were performed. Therefore, we determine that the claim asserted in the lien affidavit filed by Genina has prescribed. Our conclusion in this regard renders moot the other issues raised by defendant on appeal.
For these reasons, the result reached by the trial court is correct and its judgment is affirmed dismissing plaintiff's suit at its cost. Appellant is cast with all costs of this appeal.
AFFIRMED.
NOTES
[*] Judge Alfred A. Mansour of the 9th Judicial District Court participated in this decision as Judge Pro Tempore of the Third Circuit Court of Appeal.
[1] Plaintiff does not seek a personal judgment against defendant but only recognition and enforcement of a lien and privilege under La.R.S. 9:4861.
[2] La.R.S. 4862 was amended by Acts 1983, No. 374, effective August 30, 1983 to change the filing period from 90 days to 180 days.
[3] The Supreme Court of Louisiana granted a writ of certiorari in Miller, supra, on April 18, 1986 and presumably will consider this precise issue and the conflict between the holding of that case and the Fourth Circuit's decisions in C-Craft Marine Serv. v. Llog Exploration Co., 470 So.2d 241 (La.App. 4th Cir.1985), writ denied, 472 So.2d 921 (La.1985), and Louisiana Materials Co., Inc. v. Atlantic Richfield Company, 486 So.2d 776 (La.App. 4th Cir.1986). Since the ultimate result which we reach, under the particular circumstances of this case, will be unaffected if our holding in Miller, supra, is reversed, we will not await the Supreme Court's rendition of final judgment in the Miller case before releasing this opinion.