## RICHARD PRICE CONTRACTING COMPANY, INC.

v.

## NEOSHO CONSTRUCTION COMPANY, INC.

### Civ. A. No. 92–675–A.

United States District Court,
M.D. Louisiana.

Sept. 23, 1993.

James S. Holliday, Jr., Baton Rouge, LA, for plaintiff and counter-defendant.

W.P. Wray, Jr., Bruce Allen Craft, Wray & Kracht, Baton Rouge, LA, for defendant, counter-claimant and third-party plaintiff: Neosho Const. Co., Inc.

Steven B. Loeb, Dorothy Dubroc Thomas, Breazeale, Sachse & Wilson, Baton Rouge, LA, for defendant: Missouri Pacific R. Co.

James S. Holliday, Jr., Baton Rouge, LA, for third-party defendant: Ocean Marine Indem. Co.

## RULING ON MOTION TO DISMISS

JOHN V. PARKER, Chief Judge.

This matter is before the court on a motion by defendant, Missouri Pacific Railroad Company (the "Railroad"), to dismiss the claim brought against it by plaintiff, Richard Price Contracting Co., Inc. There is no need for oral argument. The court has previously held that it has removal jurisdiction based upon diversity of citizenship.

On July 17, 1992, plaintiff filed this action in the Eighteenth Judicial District, Parish of Pointe Coupee, State of Louisiana, claiming breach of contract by defendant, Neosho Construction Co., Inc. (Neosho), and seeking to enforce a lien against immovable property owned by the Railroad. Plaintiff claims that Neosho was the general contractor hired by the Railroad to construct a railroad yard in Livonia, Louisiana; plaintiff claims that Neosho awarded it a subcontract to perform certain site preparation work on the job. It is further alleged that Neosho wrongfully terminated the subcontract and has failed to pay monies due to plaintiff under the subcontract. Additionally, plaintiff seeks recognition of a labor and materialman's lien that it allegedly "timely filed" against the Railroad's property.

The salient issue raised by the Railroad in its motion to dismiss is whether the Louisiana railroad privilege statute, La.R.S. 9:4901, allows a subcontractor (as opposed to a contractor having "privity of contract" with the railroad) to assert a lien against immovable property owned by a railroad. A secondary issue is whether plaintiff may assert a privilege under the Louisiana Private Works Act, La.R.S. 9:4801, et seq., in the event that the court rules it has no privilege under the railroad privilege statute.

Turning first to the railroad privilege statute itself, the court finds that there is no express requirement that one have a direct contractual relationship with the railroad to assert a lien. The statute reads:

Any person who furnishes supplies, materials, or labor which enters into the construction, maintenance, or repair of the permanent road bed and structures of a railroad, has a privilege upon the road beds, tracks, rights of way, and franchises of the railroad for the amount due for the supplies, materials, or labor.

However, the Railroad cites a Louisiana appellate decision from 1931, *Southern Coal Co. v. R. & P. Const. Co.*, 16 La.App. 213, 133 So. 491 (La.App.Orl.1931), in which the court interpreted Act No. 98 of 1916 (the source of La.R.S. 9:4901) as limiting the availability of liens to those who supply materials directly to a railroad. Thus, a subcontractor, not dealing directly with the Railroad, did not come within the scope of the Act.

In *Southern Coal*, the court interpreted Act No. 98 narrowly to avoid a conflict between a provision of the Act allowing a lien and privilege to be asserted without the necessity of recordation and a provision of the Louisiana Constitution of 1921 (Art. 19, § 19) requiring recordation of privileges on immovable property to affect third persons. In other words, to maintain the constitutionality of the provision dispensing with recordation, the court found that the statute did not extend to third persons (i.e. subcontractors not contracting with the railroad) in the first place.

The "without necessity of recordation" provision of Act No. 98 has been carried over into La.R.S. 9:4902 and the Railroad contends that the reasoning used in the *Southern Coal* case is still valid today. Plaintiff contends that the *Southern Coal* decision is not controlling because he has properly recorded a lien against the property. Plaintiff also relies upon *Oil Well Supply Co. v. Independent Oil Co.*, 219 La. 936, 54 So.2d 330 (La.1951) as indicating that the Supreme Court of Louisiana would not approve the reasoning of the *Southern Coal* decision.

In *Oil Well Supply Co.*, the plaintiff claimed a lien and privilege for services and supplies, pursuant to the Oil, Gas and Water Well Lien Act, La.R.S. 9:4861. The defendant made an argument similar to that made by the Railroad here—that the claimant must have a contractual relationship with the owner, operator, producer, or driller of the lease in order to obtain a lien under the Act. The court rejected that argument, finding that the Act was plain and unambiguous and that it gave a lien to anyone furnishing labor and supplies used in drilling an oil well.

In reaching this conclusion, the court reviewed a number of Louisiana privilege statutes and found that "when it is intended that a privilege claimant must have a contract, either express or implied, with a particular person, the Legislature makes such a provision in plain terms." 54 So.2d at 332. In so doing, the court referred to the railroad privilege statute along with "numerous other

statutes which make no provision for a contract, express or implied." *Id.*

■ It is well established that in an action based upon diversity jurisdiction, a federal district court becomes, in effect, another state court. Consequently, this court must choose the rule which it concludes that the Supreme Court of Louisiana would most likely adopt if faced with the issue. *Balliache v. Fru–Con Const. Corp.*, 866 F.2d 798 (5th Cir.1989). In view of the *Oil Well Supply* decision, the court concludes that the Supreme Court would most likely construe the railroad privilege statute as it is plainly written, i.e. that anyone, including subcontractors, fall within the scope of the statute.

The court is cognizant of the fact that there is a statutory provision for recordation of oil well liens, La.R.S. 9:4862, and that one could argue that there was no need to read the oil well statute restrictively, as was done in the *Southern Coal* case. However, this argument overlooks the fact that the constitutional requirement that privileges be recorded to affect third persons was not carried over to the Louisiana Constitution of 1974. See now, La.Civ.Code art. 3272. Thus, it is no longer necessary to construe the railroad lien statute restrictively in order to maintain its constitutionality.

Further support for the court's conclusions may be found in *Louisiana Materials Co., Inc. v. Atlantic Richfield Co.*, 493 So.2d 1141 (La.1986), involving enforcement actions by subcontractors under the Oil, Gas and Water Well Lien Act (prior to its 1986 amendment[1]). In *Louisiana Materials*, the court applied the statutory provisions literally and found that the liens of the subcontractors did not need to be recorded within the time period specified by § 4862 to be effective and that recordation was necessary only for ranking purposes.

Everything considered, the court finds that plaintiff is not precluded from asserting a lien under the railroad lien statute merely because it is a subcontractor having no privity of contract with the Railroad. In view of this holding, the court does not reach plaintiff's alternative argument that it has a privilege under the Public Works Act.

Accordingly, the motion by the Railroad to dismiss is hereby DENIED.

---

1. The statute provided in part:
   If a notice of such claim or privilege ... is filed for record and inscribed in the mortgage records of the parish where the property is located within one hundred eighty days after the last day of the performance ... the privileges are superior to all other privileges or mortgages against the property, except taxes ...